Kim D. Cannon, Bar # 5-1401
Kate M. Fox, Bar # 5-2646
Davis & Cannon, LLP
40 South Main
P.O. Box 728
Sheridan, WY 82801
Telephone:   (307) 672-7491
Facsimile:   (307) 672-8955

Michael T. Hornak, (*admitted pro hac vice*) (mhornak@rutan.com)
Ronald P. Oines, (*admitted pro hac vice*) (roines@rutan.com)
Natalie M. Gowin, (*admitted pro hac vice*) (ngowin@rutan.com)
RUTAN & TUCKER, LLP
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, California 92626-1931
Telephone:   714-641-5100
Facsimile:   714-546-9035

Attorneys for Plaintiff BLACK CARD LLC

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| BLACK CARD LLC, a Wyoming Limited Liability Company,<br><br>Plaintiff,<br>v.<br><br>AMERICAN EXPRESS MARKETING & DEVELOPMENT CORP. a Delaware corporation; AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC. a New York corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 10cv0025-D |

**BLACK CARD LLC'S OPPOSITION TO DEFENDANTS' MOTION TO STAY, EXTEND TIME TO RESPOND TO, OR DISMISS WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MOTION FOR EXPEDITED CONSIDERATION**

## I. INTRODUCTION AND SUMMARY OF ARGUMENT.

The Motion for Partial Summary Judgment ("MPSJ") filed by plaintiff Black Card LLC ("BC") addresses a single issue: whether defendants American Express Marketing & Development Corp. and American Express Travel Related Services Co. (collectively, "AmEx") own any protectable trademark rights in "Black Card" or "Blackcard." There is no information that AmEx could obtain in discovery that would establish any disputed issue of material fact as to that issue. The right to exclusive use of a trademark derives from its appropriation and subsequent use in the marketplace. *Am. Express. Co. v. Goetz*, 515 F.3d 156, 161 (2nd Cir. 2008). (AmEx is very familiar with the argument set forth in BC's MPSJ; In the *Goetz* case cited above, AmEx itself obtained summary judgment in an action seeking a declaration that a defendant had no trademark rights in the mark "My Life, My Card" on the ground that the defendant never used or adopted the mark in a trademark sense.) Similarly, rights are acquired by adopting and using the mark in connection with services rendered. *Cullman Ventures, Inc. v. Columbian Art Works, Inc.*, 717 F.Supp. 96, 113 (S.D.N.Y. 1989). Thus, to rebut BC's MPSJ, AmEx must present evidence establishing its appropriation and use of the mark. ***All such evidence (assuming any exists) is in AmEx's possession.*** AmEx will *not* find evidence of such use from BC or any third party. AmEx's argument that it needs additional time to conduct discovery is a red herring.

AmEx argues in the instant Motion that BC's MPSJ should be dismissed, stayed, or continued because this Court should transfer the action to the Southern District of New York, where its later-filed action against BC is pending. (Motion, p. 2.) As a preliminary matter, BC has no objection to this Court first ruling to retain jurisdiction and to deny AmEx's motion to dismiss or transfer before ruling on BC's MPSJ. AmEx should not be permitted, however, to forestall the progression of this litigation while proceeding in New York on its home turf.

AmEx's latest arguments as to why this action should be dismissed and/or transferred to New York are without merit. Indeed, AmEx's own actions and arguments in separate litigation involving the "My Life, My Card" mark are similar to BC's actions and arguments here. In *American Express Co. v. Goetz*, S.D.N.Y. case no. 05-CV-1555, AmEx instituted an action for declaratory relief in the Southern District of New York seeking a declaration that defendant Goetz had no trademark rights in "My Life, My Card." A few weeks later, Goetz filed an infringement action in the Northern District of California. Goetz moved to dismiss the New York action in favor of his California action. AmEx opposed Goetz' motion on the ground that there is a strong presumption in favor of the forum of the first-filed suit. (Affidavit of Michel T. Hornak ["Hornak aff."], ¶ 2, Exh. A.) AmEx successfully argued that its declaratory relief action was not an "anticipatory suit" because AmEx reasonably instituted the action in response to a letter from Goetz's counsel that contained a threat of litigation but did not specify a date on which an action would be brought or any particular forum for the threatened litigation. (*Id.*) The situation here is little different.

A declaratory judgment action is anticipatory only if it is "'filed in response to a direct threat of litigation that gives specific warnings as to deadlines and subsequent legal action.'" *Children's Network, LLC v. Pixfusion LLC*, 2010 U.S. Dist. LEXIS 65294, *16 (S.D.N.Y. 2010) (quoting *Emp'rs Ins. of Wausau v. Fox Ent't Grp., Inc.*, 522 F.3d 271, 276 (2d Cir. 2008).) As set forth in BC's Opposition to AmEx's Motion to Dismiss or in the Alternative to Stay or Transfer, Although AmEx informed Barclays Bank, the issuing bank of BC's credit card, that AmEx might seek to prevent Barclays from continuing to issue the card, AmEx never made a direct threat of litigation or gave specific warnings as to a date upon which it would take further action. Rather, AmEx threatened to "expand the issues" between the parties, but did not directly threaten to file a lawsuit or give any specific deadline for further action. (Affidavit of Ronald P. Oines ["Oines

aff."], ¶ 6.) BC was not required to hold off on taking steps to protect its legal rights until AmEx decided if and when it might file suit. See *Everest Capital Ltd. v. Everest Funds Mgmt., LLC*, 178 F.Supp.2d 459, 470 (S.D.N.Y. 2002). Accordingly, BC, a Wyoming company, properly filed its declaratory relief claim in its home district of Wyoming.[1]

## II.   BRIEF STATEMENT OF PERTINENT FACTS.

### A.   Procedural History.

After allowing BC's registration for its "BLACKCARD" mark to issue without opposition, on May 13, 2009, AmEx filed a Petition for Cancellation before the Trademark Trial and Appeal Board ("TTAB"). (Oines aff., ¶ 2.) The Petition did *not* assert that AmEx has any trademark rights in or had previously used "Black Card" or "Blackcard." (*Id.*) On February 4, 2010, BC filed a Motion for Partial Summary Judgment on the ground that AmEx cannot, as a matter of law, establish that the mark falsely suggests a connection with AmEx. (*Id.*, ¶ 3.) Faced with this potentially dispositive motion, AmEx filed a motion for leave to amend the Petition to withdraw its false suggestion claim. (*Id.*) AmEx also sought to suspend the proceeding. (*Id.*)

Early in February 2010, BC learned that AmEx had informed BC's partner, Barclays, that AmEx might seek to prevent others, including Barclays, from using the "BLACKCARD" mark. (Oines aff., ¶ 5.) On February 16, 2010, BC instituted the instant proceeding, which seeks a judicial declaration that AmEx has no protectable trademark rights in "Black Card" or "Blackcard." Under a separate count not part of BC's MPSJ, BC seeks damages for AmEx's unfair competition. On February 26, 2010, AmEx filed its action in the Southern District of New

---

[1]   This Court, as the court in which the first-filed suit is pending, is the proper court to determine the venue in which the dispute between the parties should proceed. *Citigroup, Inc. v. City Holding Co.*, 97 F.Supp.2d 549, 555 (S.D.N.Y. 2000). Indeed, courts in the Second Circuit, where AmEx's later filed action is pending, follow a "bright line rule" that "[t]he court before which the first-filed action was brought determines which forum will hear the case." See *Schnabel v. Ramsay Quantitative Systems, Inc.*, 322 F.Supp.2d 505, 510-11 (S.D.N.Y. 2004) (D. Cote).

York, including claims for trademark infringement, false advertising, and trademark cyberpiracy. AmEx then filed its Motion to Dismiss or in the Alternative Stay or Transfer this action in favor of its second-filed New York action.

### B.  BC's Motion for Partial Summary Judgment.

On September 17, 2010, almost seven months after filing suit, BC filed its MPSJ.[2] The MPSJ focuses on a single issue – whether AmEx has protectable trademark rights in "Black Card." This question hinges on whether AmEx has adopted and used the mark in commerce. *Am. Ex. Co.*, 515 F.3d at 161. On September 22, 2010, at approximately 1:10 p.m. PDT, BC's counsel received a telephone call from AmEx's counsel asking whether BC would agree to withdraw its MPSJ. (Hornak aff., ¶ 3.) BC's counsel informed AmEx's counsel that BC would respond to the request shortly. (*Id.*) Just over two hours later, AmEx's counsel emailed BC's counsel asking again whether BC would withdraw its motion. (*Id.*, ¶ 4.) BC's counsel advised that he had been unable to speak with the client, but that BC would be willing to discuss a reasonable briefing schedule for the motion, subject to the Court's approval. (*Id.*) BC's counsel invited AmEx's counsel to propose such a schedule and offered a two-week extension for AmEx's Opposition to the MPSJ. (*Id.*, ¶¶ 4, 5.) Rather than proposing a briefing schedule, AmEx filed the instant motion.

## III.  ARGUMENT.

### A.  AmEx Should Not Be Permitted To Avoid A Ruling On BC's Motion for Partial Summary Judgment.

AmEx's Motion is a thinly-veiled attempt to avoid a ruling on BC's MPSJ, which addresses solely whether AmEx has rights in "Black Card." The proponent of a mark must show

---

[2]  In the *Goetz* case, discussed above, AmEx filed its Motion for Summary Judgment just eight months after filing its Complaint for Declaratory Relief.


"a trade in the goods sold under the mark or at least an active and public attempt to establish such a trade. Absent these elements, no trademark can be created or exist." *La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1274 (2nd Cir. 1974). Either AmEx can show that it has adopted "Black Card" as a mark and sold goods or services under the mark or it cannot. There is no reason AmEx cannot answer that question now. It does not need to file another complaint, or another counter-claim, or another pleading to answer the question upon which AmEx's own trademark infringement claims must rely – for without trademark rights, AmEx cannot sue Black Card for trademark infringement, and the issue of likelihood of confusion is irrelevant.

    1. **The Pendency Of AmEx's Venue Motion Does Not Justify Extending AmEx's Time To Respond To The MPSJ Until Discovery Closes.**

As previously stated, BC has no objection to the Court ruling on AmEx's venue motion prior to ruling on the MPSJ. The fact that the venue motion has not yet been decided is no reason for the case not to proceed efficiently and expeditiously in Wyoming, in the same manner that AmEx attempts to continue to proceed in New York. There is absolutely no reason why AmEx cannot prepare and file its Opposition to the MPSJ now. The Court can simply take up the matter after ruling on AmEx's venue motion. Indeed, BC's MPSJ brings to the fore the very legal and factual arguments necessary for AmEx – and BC – to intelligently evaluate the respective strengths and weaknesses of their positions in this case, which is necessary if the matter is to be resolved short of trial.

AmEx's venue motion – upon which this Court has not yet ruled – does not challenge subject-matter jurisdiction or the sufficiency of BC's declaratory relief allegations. Thus, AmEx's reliance on case law deferring summary judgment until after resolution of motions to dismiss based on subject-matter jurisdiction and failure to state a claim is misplaced. See

*Hamrick v. Farmers Alliance Mut. Ins. Co.*, 2004 U.S.Dist.LEXIS 5507 (D.Kan. 2004); *J.C. Brown, Spirit of Am. Corp. v. Walker*, 2007 U.S.Dist.LEXIS 46690 (N.D. Ind. 2007).

AmEx goes so far as to ask this Court to put off the due date for AmEx's Opposition to the MPSJ until after the close of discovery. The very purpose of motions for summary judgment is to obtain an early resolution and avoid the costs of protracted discovery. "[T]here is no requirement in Rule 56, Fed. R. Civ. P. that summary judgment not be entered until discovery is complete." *Price v. Western Resources, Inc.*, 232 F.3d 779, 784 (10th Cir. 2000) (quoting *Weir v. Anaconda Co.*, 773 F.2d 1073, 1081 (10th Cir. 1985)). Courts routinely grant summary judgment before the close of discovery. AmEx's argument that it is somehow improper for BC to use a motion for partial summary judgment to avoid costly fact and expert discovery is illogical. That is the very purpose of summary judgment motions. Simply stated, AmEx should not be permitted to forestall the progression of this litigation and deprive BC of the benefits of an early summary judgment motion on a straightforward – yet important – issue.

Finally, AmEx seems to be under the misapprehension that, if the Court grants BC's MPSJ, AmEx will somehow be precluded from pleading its case. BC has moved for *partial* summary judgment on a single issue. If the Court grants BC's motion, the parties will continue litigating BC's remaining claims (*i.e.*, unfair competition) and any legitimate counter-claims AmEx may assert.

    2.    <u>**AmEx's Argument Regarding Rules 12 and 56 of the Federal Rules of Civil Procedure Is Misleading And Incorrect.**</u>

AmEx's argument based on Rule 56(c)(1)(B) fails to acknowledge that the Rule expressly states the times set forth therein "*apply unless a different time is set by local rule. . .*" Fed. R. Civ. Proc. 56(c)(1) (emph. added). The Local Rules of the District of Wyoming govern AmEx's time to respond to a dispositive motion, and there is no reason to deviate from those rules.


### B. AmEx Failed To Carry Its Burden Of Establishing The Need For Discovery From BC Or Third Parties.

A court may reject a request for time to conduct further discovery, even if properly and timely made, if the request is based on speculation as to what potentially could be discovered. See *Wesley v. Don Stein Buick, Inc.*, 996 F.Supp. 1299, 1309 (D.Kan. 1998) (denying Rule 56(f) motion because moving party failed to show, with specificity, how additional time would enable her to obtain information to oppose summary judgment motion and exactly what information she had been unable to obtain). Similarly, denial of a Rule 56(f) motion is proper where further discovery would not change the legal and factual issues. *Maki v. Laakko*, 88 F.3d 361, 367 (6th Cir. 1996); see also *Peacock v. Retail Credit Co.*, 302 F.Supp. 418, 424 (N.D.Ga. 1969) (reasoning that further discovery "would be irrelevant, immaterial and to no avail") (aff'd *Peacock v. Retail Credit Co.*, 429 F.2d 3, 32 (5th Cir. 1970) ["There was no abuse of discretion in denying further discovery."]).

#### 1. The Narrow Issue Presented In The Motion For Partial Summary Judgment Relates Only To Evidence In AmEx's Possession.

The only issue presented in BC's MPSJ is whether AmEx has protectable trademark rights in "Black Card." Trademark rights arise out of adoption and use of the mark. *Am. Express Co.*, 515 F.3d at 161. In order to defeat the MPSJ, therefore, AmEx must present evidence of its adoption and use of "Black Card" in commerce and in connection with its goods and services. ***None of this evidence is in the possession or control of BC or any third parties.*** To the contrary, *all* of the evidence (assuming any exists) is in AmEx's possession. AmEx's contention that it needs discovery from BC and third parties to oppose the MPSJ is simply false.

Perhaps in an effort to confuse the issues, AmEx argues that it needs evidence of BC's intent in selecting the name for its Black Card and of BC's "knowing infringement" of AmEx's Centurion Card. But BC's intent ***cannot*** form the basis of AmEx's claimed trademark rights.

AmEx would apparently have the Court accept its position that if BC intended to copy the Centurion Card, that would give rise to AmEx's claimed trademark rights in "Black Card." Of course, AmEx cites no law for this novel theory, as none exists.[3]

The cases cited by AmEx are inapposite. Both cases cited by AmEx address the issue of likelihood of confusion, not whether a party owns trademark rights. See *Sally Beauty Co. Inc. v. Beautyco, Inc.*, 304 F.3d 964 (10th Cir. 2002); *Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920 (10th Cir. 1986). Before one can seek to show trademark infringement based on likelihood of confusion, it must first establish it has protectable rights in the mark at issue. See, e.g., *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1216-1219 (10th Cir. 2004) (Court did not need to address likelihood of confusion because it determined by way of summary judgment that plaintiff had no protectable interest in the alleged trademark). While an alleged infringer's intent to copy a mark may be one relevant factor in the likelihood of confusion analysis, it is *not* relevant to the question of whether a party can establish trademark rights in a mark.

BC's MPSJ addresses the fundamental prerequisite, *i.e.*, whether AmEx has trademark rights at all in "Black Card." For purposes of the MPSJ, the question AmEx needs to address is whether it can present sufficient evidence to show that it has adopted and used "Black Card" in commerce in connection with its goods and services in a manner sufficient to create trademark rights. *If such evidence exists, it is solely in AmEx's control.*

AmEx argues that it needs to develop expert evidence to establish public association of "Black Card" with AmEx. "Public association" is irrelevant, however, to the question of whether AmEx has adopted and used "Black Card" as a trademark. Use of a term by the public does not create trademark rights. *Big Blue Products, Inc. v. Int'l Bus. Machines Corp.*, 1991 TTAB

---

[3] Trademark rights arise only from the adoption and use in commerce of a mark. *Am. Express Co.*, 515 F.3d at 161.

LEXIS 9, *5-6, 19 U.S.P.Q.2d 1072 (TTAB 1991). A company must obtain rights to a mark based on the company's own use of the term. *Id.* Absent evidence of AmEx's own use and adoption of "Black Card," purported public association is irrelevant. AmEx's argument that it needs to complete expert discovery in order to oppose the MPSJ should be disregarded.

### 2. AmEx Has Had Ample Time To Conduct Any Discovery It Believes It Needs.

Even assuming AmEx needs to conduct discovery to oppose BC's MPSJ – which it does not – AmEx has had ample time to do so. The instant dispute began 16 months ago when AmEx instituted the TTAB proceeding in May 2009, and AmEx conducted discovery in connection with that proceeding. BC instituted this action in February 2010, and AmEx filed its complaint in the Southern District of New York ten days later. The latest two actions have been pending for seven months. Thus, AmEx has had plenty of time to conduct discovery.

One would assume AmEx has been gathering evidence to support its claimed trademark rights, at least since it first asserted such rights. And, of course, in this litigation, BC served an interrogatory to AmEx specifically asking AmEx to identify all documents it believes support its contention that it owns trademark rights in "Black Card." (Hornak aff., ¶ 6, Exh. B.) AmEx cannot be excused for failing to marshal the evidence required to exist for AmEx to assert trademark infringement against BC. AmEx has not propounded any discovery on BC since July 21, 2010. (*Id.*, ¶ 7.) AmEx has not propounded any discovery on a third party since July 21, 2010. (*Id.*, ¶ 8.) Having made no effort to obtain discovery since then, AmEx's argument that it now needs additional time to take discovery appears disingenuous.

The cases cited by AmEx to justify additional discovery are of no avail. In *Awulonu v. Unified Sch. Dist.*, 363 F.Supp.2d 1300 (D.Kan. 2005), the Court concluded that summary judgment was premature because all discovery in the case had been suspended. In *Gonzalex v.*

*Seal*, 2010 U.S.Dist.LEXIS 40679 (E.D.La. 2010), plaintiff filed two summary judgment motions: one contemporaneously with the complaint and another after filing of the complaint but prior to service of the summons. This is not a situation where discovery had been stayed or where a party filed a dispositive motion before serving the complaint. Rather, AmEx has had plenty of time to conduct discovery, and, in any event, no discovery is needed for AmEx's Opposition to the MPSJ.

Finally, the affidavit filed in support of AmEx's Motion is insufficient to justify the lengthy delay AmEx seeks. A Rule 56(f) declaration must explain why facts precluding summary judgment cannot be presented; identify the probable facts not available and what steps have been taken to obtain those facts; and how the additional information will rebut summary judgment. *McKinzy v. BNSF Ry. R.R.*, 2009 U.S. Dist. LEXIS 68747 at *2-3 (D.Kan. 2009) (cited by AmEx). The affidavit filed by AmEx fails to explain why AmEx cannot present evidence of its own adoption and use of the mark (assuming such evidence exists) or what *relevant* information AmEx expects to obtain from BC and third parties that would establish that *AmEx* has adopted or used the mark to rebut the MPSJ. Although the affidavit conclusively states that facts relating to BC's intent in adopting the mark is "essential" to the question of whether AmEx has trademark rights in the mark (and offers speculation as to what those facts might be), the declaration provides no support whatsoever for this idea that BC's intent is relevant, as no such support exists.

## IV.    CONCLUSION.

For the foregoing reasons, BC respectfully requests that the Court deny AmEx's Motion in its entirety or, in the alternative, set a reasonable briefing schedule that allows AmEx an additional two weeks to file its Opposition to BC's MPSJ.

Dated: This 28th day of September, 2010

>/s/ *Ronald P. Oines*
>Kim D. Cannon, Bar # 5-1401
>Kate M. Fox, Bar # 5-2646
>Davis & Cannon, LLP
>40 South Main
>P.O. Box 728
>Sheridan, WY 82801
>Telephone:    (307) 672-7491
>Michael T. Hornak, (*admitted pro hac vice*)
>mhornak@rutan.com
>Ronald P. Oines, (*admitted pro hac vice*)
>roines@rutan.com
>Natalie M. Gowin, (*admitted pro hac vice*)
>ngowin@rutan.com
>RUTAN & TUCKER, LLP
>611 Anton Boulevard, Fourteenth Floor
>Costa Mesa, California 92626-1931
>Telephone:    714-641-5100
>
>Attorneys for Plaintiff BLACK CARD LLC