# EXHIBIT A
# TO HORNAK DECLARATION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————

| | |
|---|---|
| AMERICAN EXPRESS COMPANY, | X : : |
| Plaintiff, | : : |
| v. | : Civil Action : No. 05-CV-1555 (LAK) (JCF) |
| STEPHEN G. GOETZ and GARDNER DESIGN GROUP, LLC, | : : ECF CASE |
| Defendants. | : : |
| | X |

————————————————————————

## AMERICAN EXPRESS COMPANY'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT PURSUANT TO FRCP 12(b)(1)

McDERMOTT WILL & EMERY LLP

Michael S. Sommer, Esq.
Ann E. Schofield, Esq.
Chryssa V. Valletta, Esq.
50 Rockefeller Center
New York, New York  10020
Telephone:  (212) 547-5400
Facsimile:  (212) 547-5444

Margaret M. Duncan, Esq.
Michelle C. Burke, Esq.
227 West Monroe Street
Chicago, IL 60606-5096
Telephone:  (312) 372-2000
Facsimile:  (312) 984-7700

Terrence P. McMahon, Esq.
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone:  (650) 813-5100
Facsimile:  (650) 813-5100

Attorneys for Plaintiff,
AMERICAN EXPRESS COMPANY

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

I.      INTRODUCTION ............................................................................................. 1

II.     STATEMENT OF FACTS ................................................................................ 2

      A.      The American Express MY LIFE. MY CARD.™ Service Mark and Ad
            Campaign ................................................................................................ 2

      B.      Defendants' Alleged Use of "My Life, My Card" ................................. 3

      C.      Amex's Decision to File Suit for Declaratory Relief ............................ 5

III.    ARGUMENT ..................................................................................................... 5

      A.      This Court Should Retain Jurisdiction Over This Case, the First-Filed
            Action ...................................................................................................... 5

            1.      Amex Did Not File an "Anticipatory Suit" ................................. 7

            2.      The Factors of Convenience Favor This District ........................ 9

      B.      Amex Properly Filed First to Secure Adjudication of Its Right to Continue
            Use of Its Service Mark ......................................................................... 12

IV.     CONCLUSION ................................................................................................. 16

# TABLE OF AUTHORITIES

Page

**Cases**

*800-Flowers, Inc. v. Intercontinental Florist*, 860 F. Supp. 128 (S.D.N.Y. 1994)......5, 7, 9, 10, 11

*AbovePeer, Inc. v. Recording Indus. Ass'n of Am., Inc.,* 166 F. Supp. 2d 655
    (N.D.N.Y. 2001) ..................................................................................................7, 11, 12

*Brown Welding Supply, Inc. v. F. H. Bathke Co.*, Case No. 90-4145-R, 1990 U.S.
    Dist. LEXIS 17883 (D. Kan. Dec. 13, 1990)............................................................8

*Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341 (Fed. Cir. 2005) .........................8

*Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.*, 178 F. Supp. 2d 459
    (S.D.N.Y. 2002) ...............................................................................................6, 7, 9, 10

*Fashion Television Assocs., L.P. v. Spiegel, Inc.*, 849 F. Supp. 19 (S.D.N.Y. 1994).....................15

*First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76 (2d Cir. 1989) ...................6

*Isogon Corp. v. Amdahl Corp.*, Case No. 97 Civ. 6219 (SAS), 1997 U.S. Dist.
    LEXIS 19507 (S.D.N.Y. Dec. 8, 1997) .................................................................5, 9, 10

*J. Lyons & Co. Ltd. v. Republic of Tea, Inc.*, 892 F. Supp. 486 (S.D.N.Y. 1995)...........6, 7, 10, 12

*Liebowitz v. Elsevier Sci. Ltd.*, 927 F. Supp. 688 (S.D.N.Y. 1996)...............................13

*Major League Baseball Props., Inc. v. Opening Day Prods., Inc.*, Case No. 96
    Civ. 7078 (GBD), 2004 U.S. Dist. LEXIS 26436 (S.D.N.Y. January 6, 2004)................14, 15

*Mastercard Int'l Inc. v. First Nat'l Bank of Omaha, Inc.*, Case No. 02 Civ. 3691
    (DLC), 2002 U.S. Dist. LEXIS 21839 (S.D.N.Y. Nov. 12, 2002) ............................6, 7, 9, 10

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F. Supp. 2d 289
    (S.D.N.Y. 2003).................................................................................................2

*Tempco Elec. Heater Corp. v. Omega Eng'g Inc.*, 819 F.2d 746 (7th Cir. 1987).........................6

**Statutes**

15 U.S.C. § 1127...............................................................................................14

28 U.S.C. § 1404(a) ...........................................................................................9

- ii -

**TABLE OF AUTHORITIES**
(continued)

Page

**Rules**

FRCP 12(b)(1) ...............................................................................................................................1

## AMERICAN EXPRESS COMPANY'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT PURSUANT TO FRCP 12(b)(1)

Plaintiff American Express Company ("Amex"), by and through its attorneys, McDermott Will & Emery LLP, respectfully submits this Opposition to Defendants' Motion to Dismiss the Complaint Pursuant to FRCP 12(b)(1).

### I. INTRODUCTION

On January 26, 2005, the day Amex received a letter from Defendants, Stephen G. Goetz and Gardner Design Group, LLC (respectively, "Goetz" and "Gardner"; collectively, "Defendants"), Amex's global advertising campaign featuring its service mark MY LIFE. MY CARD. was in full swing, having been launched nationwide almost three months before. Defendants' letter alleged that Gardner owned trademark rights in the phrase "My Life, My Card" and claimed that Amex somehow had "misappropriated" Amex's service mark from an unsolicited product proposal tendered by Gardner.[1]

After carefully investigating the allegations made in Defendants' letter, Amex concluded that they were baseless. It is not uncommon for large corporations with highly-visible products and advertising campaigns to receive such unfounded claims, made in an effort to extract a windfall, rather than to press for legitimate redress. Such was Defendants' letter, in which Defendants' counsel invited Amex "to discuss terms for an appropriate license agreement with Gardner Design for the subject mark." *See* 1/25/05 Letter from Eric K. Ferraro to John D. Hayes ("1/25/05 Letter"), p. 2, attached as Ex. A to Declaration of Chryssa V. Valletta ("Valletta Decl."). Because Amex was not interested in licensing a mark that it already owned, the most

---

[1] Notwithstanding that the letter from Defendants' counsel invited Amex to "discuss terms for an appropriate license agreement with Gardner Design for the subject mark," Goetz now says that "Gardner Design does not own or claim to own the trademark at issue in this litigation." Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint ("Defs. Memorandum"), p. 3, fn. 1.

- 1 -

appropriate course of action was to file Amex's Complaint for declaratory relief in the Southern

District of New York, the forum with the most significant connections to this case.  In doing so,

Amex neither engaged in an inappropriate "race" to the courthouse nor forum shopping.  Rather,

Amex is the aggrieved trademark owner, not Defendants, and as such, Amex should be entitled

to maintain its first-filed action for declaratory relief in this Court.  Therefore, Amex respectfully

requests that this Court deny Defendants' Motion and retain jurisdiction to affirm Amex's

rightful ownership of the MY LIFE. MY CARD. service mark and its continued right to use the

mark.

## II. STATEMENT OF FACTS

**A.**     **The American Express MY LIFE. MY CARD.™ Service Mark and Ad Campaign**

During the spring and throughout the summer of 2004, Amex and its outside advertising

agency, Ogilvy & Mather ("O&M"), developed a new global card brand campaign, including

television, print, on-line and cinema advertising, and a website, all of which would be linked

through the common use of a single service mark reflecting a core brand message.  Complaint,

¶ 8.[2]  Prior to July 30, 2004, O&M already had presented the mark MY LIFE. MY CARD. to be

used by Amex as the service mark for its global card brand campaign.  Complaint, ¶ 9.

Once approved, Amex took the appropriate steps to establish its rights in Amex's MY

LIFE. MY CARD. service mark.  On September 1, 2004, Amex registered "mylifemycard.com"

as a domain name.  Complaint, ¶ 11.  Between the 7th and 10th of September 2004, consumer

---

[2] For purposes of Amex's Opposition to Defendants' Motion to Dismiss, all allegations in Amex's Complaint are deemed to be true.  *See Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F. Supp. 2d 289, 306 (S.D.N.Y. 2003) ("in considering a motion to dismiss pursuant to [Rule] 12(b)(1), a court must assume as true factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor").

A    9

research was conducted on behalf of O&M and Amex on the MY LIFE. MY CARD. campaign in both New York and Chicago. Complaint, ¶ 12.

Without any prior knowledge of Goetz's alleged trademark application, Amex filed its U.S. service mark application for MY LIFE. MY CARD. on September 15, 2004. Complaint, ¶ 14. On November 8, 2004, Amex issued a press release announcing the worldwide launch of its MY LIFE. MY CARD. ad campaign, featuring extraordinary individuals including actor Robert DeNiro, professional golfer Tiger Woods, comedian and television show host Ellen DeGeneres and professional surfer Laird Hamilton. *See* 11/08/04 Press Release, attached as Ex. B to Valletta Decl. Amex's initial television commercials and print advertisements made their first appearances on that same date, as did its website at www.mylifemycard.com. *Id.*

**B.     Defendants' Alleged Use of "My Life, My Card"**

At an uncannily similar timeframe to the O&M and Amex creation and development of Amex's service mark and ad campaign, Defendants allegedly sent to Amex the letter attached as Ex. C to Valletta Decl.[3] Goetz now alleges that he:

> developed various card personalization and marketing services, including a proprietary technology solution *to be licensed and/or sold to card companies,* which would in turn give such credit card companies the ability to offer their customers many valuable card personalization options under a global brand and slogan.

---

[3] The copy of the letter attached to Goetz's Declaration bears a date of January 18, 2005. Inexplicably, the letter is on Mez Design letterhead, in it Goetz states that "Mez Design can help you do it better than your competition," "Mez Design has done the research," "Mez Design has helped its partners increase brand awareness and gain market share," and, in closing, Goetz indicates that he is a "Corporate Consultant, Mez Design," which strongly implies that, if this indeed is the letter that was sent, Goetz was offering a Mez Design idea to Amex, not his own.

A    10

Defs. Memorandum, pp. 3-4 (emphasis added).[4] Goetz also alleges that he intended to license or

sell his "credit card personalization and marketing services" to such credit-card issuers "under

[his] proprietary trademark and brand name." Goetz Decl., ¶ 4.

Again, at an uncannily similar time to the publicly-available registration of Amex's

www.mylifemycard.com domain name (September 1, 2004), the launch of Amex's consumer

focus groups in Chicago and New York (September 7 – 10, 2004), and the filing of Amex's U.S.

service mark application for MY LIFE. MY CARD. (September 15, 2004), Goetz also

electronically filed a U.S. trademark application for "My Life, My Card" for "computer software

for financial credit/debit card content management" on September 8, 2004. *See* Complaint,

¶¶ 11-14.

To date, the only "use" of "My Life, My Card" specifically referenced by Defendants in

the record is the purported appearance of their alleged mark in the unsolicited proposals that

Goetz alleges he sent to MasterCard and American Express in July 2004, and the purported

appearance of "My Life, My Card" on a website allegedly owned by Goetz. Goetz California

Complaint, ¶ 32. First, the registrant of the "mylife-mycard.com" domain name is Gardner, not

Goetz. WHOIS search, p. 1, attached as Ex. D to Valletta Decl. Second, this website,

www.mylife-mycard.com, currently does not contain any offer of goods or services, but merely

invites the user to either request more information or send comments. *See* www.mylife-

mycard.com web page, attached as Ex. E to Valletta Decl.

---

[4] This product is described in Defs. Memorandum as "a software-based technology solution *to be marketed and licensed* to credit card companies that would enable such companies to offer uniquely personalized custom credit cards to their cardholders that would bear, for example, photographs that are supplied by the cardholders themselves, and do so with automated mass-production economy of scale." Defs. Memorandum, p. 3, fn. 2 (emphasis added).

**C.    Amex's Decision to File Suit for Declaratory Relief**

Upon receipt of Defendants' January 25, 2005 letter, Amex promptly investigated Defendants' claims. Amex confirmed that O&M and Amex created and developed the MY LIFE. MY CARD. service mark and ad campaign *before* July 30, 2004, the date Defendants claim they sent their unsolicited proposal to Amex. *See* Complaint, ¶ 9.

Because of the importance of the MY LIFE. MY CARD. mark and its advertising campaign, Amex could not afford the uncertainty presented by a competing claim of rights to the mark and the potential damage to Amex's service mark, advertising campaign and reputation. Therefore, on February 4, 2005, Amex promptly filed this action seeking declaratory relief that Amex is the sole and exclusive owner of the service mark MY LIFE. MY CARD.

After Amex filed its suit, Defendants' counsel initiated contact with Amex's attorneys. *See* Declaration of Eric K. Ferraro in Support of Defendants' Motion to Dismiss the Complaint, ¶ 6. However, Goetz waited until March 2, 2005, to file his Complaint in the Northern District of California, almost four months after Amex launched its advertising campaign, more than five weeks after Goetz's attorney first wrote to Amex and nearly one month after Goetz was served with Amex's Complaint.

## III. ARGUMENT

**A.    This Court Should Retain Jurisdiction Over This Case, the First-Filed Action**

"Generally, there is a strong presumption in favor of the forum of the first-filed suit." *800-Flowers, Inc. v. Intercontinental Florist*, 860 F. Supp. 128, 131-32 (S.D.N.Y. 1994) ("The first filed rule was developed to 'serve[ ] the purposes of promoting efficiency [ ] and should not be disregarded lightly.'") (citations omitted); *Isogon Corp. v. Amdahl Corp.*, Case No. 97 Civ. 6219 (SAS), 1997 U.S. Dist. LEXIS 19507, at *9 (S.D.N.Y. Dec. 8, 1997) ("generally the first-

A      12

filed action should proceed and the later-filed action should be stayed or dismissed")[5].  Indeed, "[i]t is a 'well-settled principle in [the Second] Circuit that where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second.'" *Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.*, 178 F. Supp. 2d 459, 469 (S.D.N.Y. 2002) (*quoting First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989); *see also Mastercard Int'l Inc. v. First Nat'l Bank of Omaha, Inc.*, Case No. 02 Civ. 3691 (DLC), 2002 U.S. Dist. LEXIS 21839 at *2-3 (S.D.N.Y. Nov. 12, 2002).[6]

Defendants wholly misstate Second Circuit law on the application of the first-to-file rule. Defs. Memorandum, pp. 8-10.  Contrary to the Defendants' assertions, this Circuit does *not* follow *Tempco Elec. Heater Corp. v. Omega Eng'g Inc.*, 819 F.2d 746 (7th Cir. 1987), which holds that declaratory judgment actions are not favored when a coercive claim for trademark infringement exists, regardless of other circumstances compelling retention of jurisdiction.  As this Court has stated, "[the Second] Circuit has not followed *Tempco*" in maintaining "a general presumption against declaratory judgment actions." *J. Lyons & Co. Ltd. v. Republic of Tea, Inc.*, 892 F. Supp. 486, 491 (S.D.N.Y. 1995).  Instead, the focus of the inquiry in the Second Circuit is whether there are special circumstances that warrant departure from the first-to-file rule.  *Id.*

The Second Circuit has defined "[s]pecial circumstances [as existing] where . . . the first-filed declaratory judgment action had been filed in anticipation of the second suit or where forum

---

[5] Amex has provided the Court with courtesy copies of all cases published by LexisNexis™ cited herein.

[6] The Defendants argue that there are actually two different versions of this rule, one applicable to trademark infringement cases and one to cases not involving trademark infringement.  The Defendants cite no Second Circuit cases to support this distinction, and, indeed, cite to at least one trademark infringement case where this Court applies the rule to dismiss a second-filed trademark infringement action in favor of the defendants' first-filed declaratory actions pending in other forums. *J. Lyons & Co. Ltd. v. Republic of Tea, Inc.*, 892 F. Supp. 486, 493 (S.D.N.Y. 1995).

A   13

shopping alone motivated the choice of forum in the filing of the first suit." *J. Lyons & Co.*, 892

F. Supp. at 491; *see also Everest Capital*, 178 F. Supp. 2d at 469; *Mastercard Int'l*, 2002 U.S.

Dist. LEXIS 21839 at *2-5; *800-Flowers*, 860 F. Supp. at 132.

Defendants, as the moving parties, "[bear] the burden of demonstrating any special

circumstances justifying an exception to the rule." *800-Flowers*, 860 F. Supp. at 132. As

discussed below, Defendants fail to meet this burden. Therefore, this Court should retain

jurisdiction over this case, the first-filed action, and deny Defendants' Motion to Dismiss.

### 1.    Amex Did Not File an "Anticipatory Suit"

A declaratory judgment action is not considered anticipatory where it is filed in response

to a letter indicative of negotiations. *See, e.g., J. Lyons & Co. Ltd. v. Republic of Tea, Inc.*, 892

F. Supp. 486, 491 (S.D.N.Y. 1995). Further, merely setting a date for response to a cease-and-

desist letter does not signal an intention to file suit on that date. *See Mastercard Int'l*, 2002 U.S.

Dist. LEXIS at *3-4 (letter asserting infringement and demanding response within ten days did

not amount to a notice of suit). Even coupling a date for response with a statement that the

sender "would have 'little choice but to seek additional legal remedies,'" does not convert a

cease-and-desist letter into a "notice of suit" that may render an ensuing declaratory judgment

action an "improper anticipatory action." *AbovePeer, Inc. v. Recording Indus. Ass'n of Am.,

Inc.,* 166 F. Supp. 2d 655, 658 (N.D.N.Y. 2001).

Although the January 25, 2005 letter from Defendants' counsel, Mr. Ferraro, contains a

threat of litigation, Mr. Ferraro invites Amex to contact him immediately "to discuss terms for an

appropriate license agreement with Gardner Design for the subject mark." The letter concludes

with "[p]lease contact me immediately, but in any event not later than February 4, 2005, if

American Express is interested in discussing this matter. I look forward to speaking with you."

- 7 -

A        14

Valletta Decl., Ex. A, 1/25/05 Letter.  Significantly, nowhere does the letter specify a date on which an action will be brought, nor does it specify any particular forum for the threatened litigation.

Defendants point to Amex's decision to file suit on the date their attorney set for response as evidence of a "race to the courthouse," making much of the fact that Amex chose not to accept their invitation to call their lawyer in order to negotiate a license agreement.  However, there is no rule that compels a party to negotiate with someone who has challenged its business interests. *See Brown Welding Supply, Inc. v. F. H. Bathke Co.*, Case No. 90-4145-R, 1990 U.S. Dist. LEXIS 17883, at *6 (D. Kan. Dec. 13, 1990) (in retaining jurisdiction over first-filed declaratory judgment action, the court explained that "[p]laintiff has a right to take legal grievances to court[; t]he law does not require plaintiff to negotiate").  In fact, the Federal Circuit has held recently that parties need not wait until the date set for response in a cease-and-desist letter to file a declaratory judgment action. *Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341 (Fed. Cir. 2005) (filing declaratory judgment action four days prior to the date set for response was not improper).

Defendants also retroactively attempt to create a notice of suit where none existed by arguing that "[t]he cease-and-desist letter stated in no uncertain terms that if American Express did not stop its infringing activities or lawfully acquire the rights to use the Infringing Mark by February 4, 2005, Goetz's California counsel would have no choice but to immediately file a coercive trademark infringement action."  Defs. Memorandum, p. 5.  Contrary to Defendants' assertion, that is not the language used in the letter; and they were not prepared to file suit "immediately."  When Amex served its Complaint on Defendants, instead of filing an immediate action, Defendants inexplicably delayed in filing suit until almost one month later.

A    15

Defendants' overall conduct demonstrates that its letter did not constitute "notice of a suit." *See, e.g., Mastercard Int'l*, 2002 U.S. Dist. LEXIS 21839, at *3 (where the declaratory judgment defendant delayed its own filing, dismissal of the first-filed action was not warranted). Therefore, the "anticipatory suit" exception does not apply here, and the Court should not deviate from the first-to-file rule.

### 2.   The Factors of Convenience Favor This District

Once the Court determines that the first-to-file rule applies in a given case, and that no special circumstances exist that would warrant deviation from this rule, it must then consider whether the balance of convenience favors the forum in which the second action was filed.[7] The question of whether to set aside the first-filed rule in favor of transferring an action to another district, in which a later-filed action is pending, requires courts to apply the same factors considered in a 28 U.S.C. § 1404 (a) motion. *See, e.g., 800-Flowers, Inc. v. Intercontinental Florist*, 860 F. Supp. 128, 131-32 (S.D.N.Y. 1994); *Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.*, 178 F. Supp. 2d 459, 465 (S.D.N.Y. 2002) ("the factors relevant to the balance of convenience analysis are essentially the same as those considered in connection with motions to transfer venue pursuant to [§ 1404 (a)]."); *Isogon Corp. v. Amdahl Corp.*, Case No. 97 Civ. 6219 (SAS), 1997 U.S. Dist. LEXIS 19507, at *10-11 (S.D.N.Y. Dec. 8, 1997). These factors include:

> (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

---

[7] The Defendants do not specifically address this aspect of the Court's review of a motion to dismiss a first-filed suit, although they do mention some facts that seem to be directed towards the balance of convenience test.

A    16

*Isogon*, 1997 U.S. Dist. LEXIS 19507, at \*11-12 (*citing 800-Flowers, Inc.*, 860 F. Supp. at 133).

Further, while Defendants accuse Amex of "forum-shopping," "merely filing a declaratory action does not indicate forum shopping." *J. Lyons & Co. Ltd. v. Republic of Tea, Inc.*, 892 F. Supp. 486, 491 (S.D.N.Y. 1995); *see also Everest Capital*, 178 F. Supp. 2d at 469. "Forum shopping occurs when a litigant selects a forum with only a slight connection to the actual circumstances of his action, or where forum shopping alone motivated the choice." *Everest Capital*, 178 F. Supp. 2d at 470. In contrast, a party who files a proper declaratory judgment action in the most convenient forum for him to resolve a ripe legal dispute is not engaged in forum shopping. *See, e.g., J. Lyons & Co.*, 892 F. Supp. at 491.

Here, Amex could not have engaged in forum shopping when it selected New York as the forum for its declaratory judgment action – New York is the center of the events involved in this case. *See Mastercard Int'l Inc. v. First Nat'l Bank of Omaha, Inc.*, Case No. 02 Civ. 3691 (DLC), 2002 U.S. Dist. LEXIS 21839, at \*2-3 (S.D.N.Y. Nov. 13, 2002) (holding that filing suit in a location with significant connections to the litigation undermines any assertion of improper forum shopping). All of the key witnesses, including non-party witnesses who are employed by O&M, who have knowledge of Amex's creation, development and adoption of the MY LIFE. MY CARD. mark reside in this forum. *See* Declaration of John D. Hayes ("Hayes Decl."), ¶ 6, attached as Ex. F to Valletta Decl. Likewise, all of the key witnesses, who plan and coordinate the marketing, advertising and distribution of Amex's services offered under the mark, reside in the New York area. *Id.* Importantly, several of these material witnesses, such as those non-party witnesses employed by O&M, are outside the subpoena power of the California Court, but not the subpoena power of this Court. *See, e.g., 800-Flowers, Inc.*, 860 F. Supp. at 134 ("The

- 10 -

A 17

convenience of both party and non-party witnesses may be the single most important factor in the analysis of whether one forum is more appropriate than a competing forum.").

In addition, all of the relevant documents relating to these issues are located in this District. Hayes Decl., ¶ 7. And key events such as O&M and Amex's creation, development and Amex's adoption of the MY LIFE. MY CARD. mark were conducted in this District. Hayes Decl., ¶ 4. Also, many of Defendants' allegations are centered in this District, such as whether Amex "misappropriated" anything from them and whether their proposal arrived at Amex as alleged. *See 800-Flowers, Inc.*, 860 F. Supp. at 134 ("The location of operative facts is traditionally an important factor to be considered in deciding where a case should be tried."); *AbovePeer, Inc. v. Recording Indus. Ass'n of Am., Inc.*, 166 F. Supp. 2d 655, 659 (N.D.N.Y. 2001) (same). Moreover, while Goetz has alleged that he has few contacts with this forum, it is believed that Goetz is a New York native and has sufficient and regular contacts with this State such that he did not challenge this Court's personal jurisdiction.[8]

"Relative means of the parties" is one of the factors that Defendants seem to argue favors Goetz's choice of forum. Although Goetz alleges that he is a sole proprietor of a business located in San Francisco, he will not be required to travel to New York until trial; and since he has no employees, he will not have the expense associated with flying them to be witnesses at the trial. In addition, far more discovery will take place in New York than in San Francisco, so the cost of litigation in whatever forum it is conducted will be the same to Goetz. For example, Amex would not be compelled to produce its witnesses for depositions in the Northern District

---

[8] At the time that Amex filed the Complaint, Goetz held a New York driver's license and his social security number was issued by the State of New York. Complaint, ¶ 3. Goetz does not deny these allegations, but rather, states that his "current" driver's license is not issued by the State of New York. Goetz Declaration, ¶ 1.

A   18

of California, and there are many more witnesses and documents located in New York than in California.

The interests of justice also favor adjudication of this matter in New York because it is the first-filed action. *J. Lyons & Co. Ltd.*, 892 F. Supp. at 493 (holding that "trial efficiency and the interests of justice, based on a totality of the circumstances, dictate that the forums of the first-filed suits are the more convenient forums"). Other of the factors are neutral, such as the forum's familiarity with the governing law, since many trademark infringement cases are brought in both this District and the Northern District of California. While balancing the factors of convenience is in this Court's sound discretion, these factors favor this Court's jurisdiction over Amex's first-filed action in this District.

**B.   Amex Properly Filed First to Secure Adjudication of Its Right to Continue Use of Its Service Mark**

The Declaratory Judgment Act exists:

> [t]o enable a party who is challenged, threatened, or endangered in the enjoyment of what he claims to be his rights, to initiate the proceedings against his tormentor and remove the cloud by an authoritative determination of plaintiff's legal right, privilege and immunity and the defendant's absence of right, and disability.

*AbovePeer, Inc. v. Recording Indus. Ass'n of Am.*, 166 F. Supp. 2d 655, 658 (N.D.N.Y. 2001) (citations omitted). Amex properly filed this action to secure the prompt adjudication of its right to continue using its service mark MY LIFE. MY CARD. in its nationwide advertising campaign, and not as an "anticipatory suit" or for purposes of forum shopping.

Because Amex and O&M created and developed the mark *before* Defendants allegedly sent their unsolicited proposal to Amex, Amex could not have "misappropriated" its mark from Defendants. *See* Complaint, ¶ 9. Moreover, as discussed below, Defendants do not own any legitimate trademark rights in "My Life, My Card", and therefore, Amex cannot infringe

Defendants alleged "proprietary and trademark-protected Program name." *See* Valletta Decl., Ex. A, 1/25/05 Letter.

Notwithstanding that Defendants argue they are somehow the "real" and "coercive trademark plaintiff[s]" in this case, Defendants do not own a U.S. Trademark Registration for "My Life, My Card". As such, Defendants are not entitled to *any* presumptions afforded by the Lanham Act, including that they are somehow the presumptive owner of the mark at issue in this action. Any purported rights of Defendants must emanate from their legitimate use of the mark on goods or services in U.S. commerce. As this Court has written, "[a] trademark is, essentially, a designation of origin . . . Because the value of a trademark arises from its association with goods of a particular quality and source, a trademark comes into existence only once it is affixed to goods in commerce." *Liebowitz v. Elsevier Sci. Ltd.*, 927 F. Supp. 688, 696 (S.D.N.Y. 1996).

Here, Defendants have no legitimate use of their alleged mark and, therefore, do not own any trademark rights in "My Life, My Card". The lack of indicia of legitimate ownership of trademark rights by Defendants is supported by their own documents. *See* Valletta Decl., Ex. A, 1/25/05 Letter; Goetz's U.S. Trademark Application No. 78/480,627, attached as Ex. G to Valletta Decl.; and Defendants' pleadings and supporting declarations. These documents highlight that Defendants have not used "My Life, My Card" legitimately on any goods or services, much less by the time Amex filed its service mark application on September 15, 2004, and launched its nationwide use of its MY LIFE. MY CARD. service mark on November 8, 2004.

Defendants have not provided a scintilla of evidence that they have "affixed" "My Life, My Card" to any goods or services, much less in "commerce," as that word is defined in the

- 13 -

A   20

federal Lanham Act.[9]  Nowhere in any of the correspondence, pleadings or declarations provided

by Defendants is there any statement that they actually have sold or licensed any goods or

services to any segment of the public under the mark in dispute, nor have they claimed any

public or industry-wide dissemination of their proposal, nor any public demonstration of their

"product."  In fact, it is difficult to discern what goods or services they intended to offer under

the alleged mark.  The U.S. Patent and Trademark Office records show that Goetz's "use"-based

trademark application describes his goods as "computer software for financial credit/debit card

content management," while Goetz states in the California Complaint that he has "used the Mark

in connection with his services to promote personalized financial cards."  *See* Valletta Decl., Ex.

G, U.S. Trademark Application No. 78/480,627, p. 1 and Goetz's California Complaint, ¶ 32,

respectively.

     In fact, to date, the only "use" of the mark by Defendants referenced in the record is the

purported non-public appearance of the mark in unsolicited proposals that Defendants allegedly

sent to MasterCard and American Express in July 2004, and the appearance of "My Life, My

Card" on a website allegedly owned by Goetz.  The "use" of a mark solely in a proposal is

simply not "use in commerce" for purposes of establishing trademark rights.  "The talismanic

test is whether or not the mark was used 'in a way sufficiently *public* to identify or distinguish

the marked goods in an appropriate segment of the *public mind* as those of the adopter of the

mark.'"  *Major League Baseball Props., Inc. v. Opening Day Prods., Inc.*, Case No. 96 Civ.

7078 (GBD), 2004 U.S. Dist. LEXIS 26436, at *27 (S.D.N.Y. Jan. 6, 2004) (emphasis added);

---

[9] "The term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade .... For purposes of this Act, a mark shall be deemed to be in use in commerce -- (1) on goods when -- (A) it is placed in any manner on the goods or their containers or the displays associated therewith ... and (B) the goods are sold or transported in commerce, and (2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce." 15 U.S.C. § 1127.

A    21

*see also Fashion Television Assocs., L.P. v. Spiegel, Inc.*, 849 F. Supp. 19, 21 (S.D.N.Y. 1994) (holding that "plaintiff's promotional efforts are not adequate to establish use of the mark in commerce"). "[T]rademark rights are not created by sporadic, casual, and nominal shipments of goods bearing the mark. There must be a trade in the goods sold under the mark or at least an active and *public* attempt to establish such a trade." *Major League Baseball*, 2004 U.S. Dist. LEXIS 26436, at *23 (emphasis added) (citations omitted).

The website does not provide any additional support for Defendants' claim that they own trademark rights in "My Life, My Card". Although the domain name was registered by Gardner on September 7, 2004, six days *after* Amex registered its domain name, this is not indicative of when the website actually was accessible to the public. *See* Valletta Decl., Ex. D, WHOIS search, p. 1. More importantly, the website is nothing but a barebones site that does not contain an offer of goods or services; instead, it only invites the viewer to either request more information or to send comments. *See* Valletta Decl., Ex. E, www.mylife-mycard.com web page. In contrast, Amex has been offering its credit card services to consumers nationwide under the mark MY LIFE. MY CARD. since at least November 8, 2004.

Since Amex and O&M created and developed the mark *before* Defendants allegedly sent their proposal to Amex, Amex could not have "misappropriated" its mark from Defendants. *See* Complaint, ¶ 9. Moreover, Defendants do not own any trademark rights in "My Life, My Card", and therefore, Amex cannot infringe any purported rights of Defendants. In sum, Amex is the aggrieved trademark owner and natural plaintiff in this dispute and is entitled to an adjudication of its rights in this declaratory judgment proceeding.

A    22

## IV. CONCLUSION

For the foregoing reasons, Plaintiff American Express Company respectfully requests that this Court retain jurisdiction over this action to adjudicate Amex's right to continue using without interference its mark MY LIFE. MY CARD., and deny Defendants' Motion to Dismiss the Complaint. Further, American Express requests that this Court enjoin Defendants from proceeding with the prosecution of the action filed by Goetz in the Northern District of California, and grant such other relief as it deems just under the circumstances.

Dated:  March 28, 2005

McDERMOTT WILL & EMERY LLP


By: _Chryssa V. Valletta_
Michael S. Sommer (MS-2727)
Ann E. Schofield (AS-6832)
Chryssa V. Valletta (CV-8507)
50 Rockefeller Center
New York, New York 10020
Telephone:  (212) 547-5400
Facsimile:  (212) 547-5444

Margaret M. Duncan, Esq.
Michelle C. Burke, Esq.
227 West Monroe Street
Chicago, IL 60606-5096
Telephone:  (312) 372-2000
Facsimile:  (312) 984-7700

Terrence P. McMahon, Esq.
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone:  (650) 813-5100
Facsimile:  (650) 813-5100


*Attorneys for Plaintiff, American Express Company*

# CERTIFICATE OF SERVICE

I certify under penalty of perjury pursuant to 28 U.S.C. §1746 that on March 28, 2005  I caused to be served upon the party below by electronic means a true and correct copy of American Express Company's Opposition to Defendants' Motion to Dismiss the Complaint Pursuant to FRCP 12(b)(1) and the Declaration of Chryssa V. Valletta in Opposition to Defendants' Motion to Dismiss.

John Mark Lane, Esq.
Koo Larrabee Lau-Kee & Lane, L.L.P
106 Corporate Park Drive
White Plains, NY 10604
jmlane@kllklaw.com


Dated: New York, New York
       March 28, 2005



Bonnie S. Schwab