Frank D. Neville W.S.B. # 4-1145
Ryan J. Schwartz W.S.B. # 6-3611
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
P.O. Box 10700
Casper, WY  82602-3902

David H. Bernstein (Admitted *pro hac vice*)
Eric D. Meyer (Admitted *pro hac vice*)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022

Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| BLACK CARD, LLC, a Wyoming limited Liability company, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 10-CV-0025-D |
| AMERICAN EXPRESS MARKETING & DEVELOPMENT CORP., a Delaware corporation; AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC., a New York Corporation; [And DOES 1 through 10, inclusive], | ) ) ) ) ) | |
| Defendants. | ) ) | |

---

**DEFENDANT AMERICAN EXPRESS'S ANSWER AND COUNTERCLAIMS,
SUBMITTED WITHOUT PREJUDICE TO PENDING  MOTIONS TO DISMISS,
STAY OR TRANSFER VENUE.**

---

## PRELIMINARY STATEMENT

On October 25, 2010, the parties stipulated that answers and counterclaims, if any, to the complaints filed in this action and in the action pending before the United States District Court for the Southern District of New York captioned *American Express Marketing & Development Corp. and American Express Travel Related Services Corp*, 10 Civ. 1605 (DLC) (the "New York Action") shall be filed by October 29, 2010, without prejudice to either party's position as to the proper forum for these two actions and without prejudice to either party's right, subsequent to the filing of such responsive pleadings, to bring any motion that it would otherwise be obligated to bring before the filing of a responsive pleading.  Accordingly, the filing of this Answer and Counterclaim is without prejudice to American Express's pending motion to dismiss, stay or transfer this action, filed on March 1, 2010.

## ANSWER

Defendants American Express Marketing & Development Corp. and American Express Travel Related Services Company, Inc. (together "American Express") by and through their undersigned attorneys, Williams, Porter, Day & Neville, P.C. and Debevoise & Plimpton, LLP, for their Answer to the Complaint and Counterclaims against plaintiff Black Card, LLC, state as follows:

2

**PARTIES**

1.      American Express denies the allegations contained in paragraph 1 of the Complaint except admits that upon information and belief, the principal place of business of plaintiff Black Card LLC is a Wyoming Limited Liability Company with its principal place of business located in Jackson, Wyoming.

2.      American Express admits the allegations contained in paragraph 2 of the Complaint.

3.      American Express admits the allegations contained in paragraph 3 of the Complaint.

4.      American Express denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 4 of the Complaint and therefore denies the same.

5.      American Express denies the allegations contained in paragraph 5 of the Complaint, except neither admits nor denies the allegations contained in paragraph 5 to the extent they call for a legal conclusion to which no response is required, and denies having knowledge or information sufficient to form a belief as to the truth of the allegations regarding DOES 1 through 10.

**JURISDICTION AND VENUE**

6.      American Express neither admits nor denies the allegations contained in paragraph 6 of the Complaint because they call for legal conclusions to which no response is required, except admits that plaintiff asserts a claim for a declaratory

3

judgment under the Lanham Act, 15 U.S.C. §§ 1111, et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

7.      American Express neither admits nor denies the allegations contained in paragraph 7 of the Complaint because they call for a legal conclusion to which no response is required, except American Express admits that it conducts business within the District of Wyoming.

8.      American Express denies the allegations contained in paragraph 8 of the Complaint, except neither admits nor denies the allegations contained in paragraph 8 to the extent they call for a legal conclusion to which no response is required.

9.      American Express neither admits nor denies the allegations contained in paragraph 9 of the Complaint because they call for a legal conclusion to which no response is required, except that American Express respectfully refers the Court to Defendants' Memorandum of Law in Support of Motion to Dismiss or, in the Alternative, to Stay or Transfer, filed on March 1, 2010, for a discussion of American Express's assertion that the proper venue for this matter is the Southern District of New York.

## FACTS

### Plaintiff and its Business

10.      American Express denies the allegations contained in paragraph 10 of the Complaint, except (*i*) denies knowledge or information sufficient to form a belief as to the nature of plaintiff's business, (*ii*) admits that plaintiff has obtained a single trademark registration in the United States for the BLACKCARD mark, which American Express has petitioned the Trademark Trial and Appeal Board (the "TTAB") to cancel, (*iii*)

4

admits that plaintiff has several additional pending applications to register variations of the BLACKCARD mark in the United States Patent and Trademark Office ("USPTO"), all of which have provisionally been refused and are currently suspended; and (*iv*) denies knowledge or information sufficient to form a belief as to other registrations and applications relating to plaintiff's business outside the United States.

11.     American Express admits the allegations contained in paragraph 11 of the complaint and avers that American Express has petitioned the TTAB to cancel Registration No. 3613898 for plaintiff's BLACKCARD mark on May 13, 2009, within 15 days of the registration of that mark.

12.     American Express denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 12 of the complaint.

13.     American Express denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 13 of the complaint, except admits that plaintiff has advertised its product in certain newspapers.

14.     American Express denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 14 of the complaint.

**The American Express Centurion Card**

15.     American Express denies the allegations contained in paragraph 15 of the complaint, except (*i*) avers that American Express is a leading provider of global financial services, including credit and charge card services, (*ii*) admits that, in 1999, American Express began offering the black-colored Centurion Card under the "CENTURION" mark (which was registered in 2001) and (*iii*) avers that, soon after the

5

Centurion Card was launched, the public, the media, and American Express began to use the term "Black Card" to refer to the Centurion Card.

16.     American Express denies the allegations contained in paragraph 16 of the complaint.

17.     American Express denies knowledge or information sufficient to support a belief as to the allegations contained in paragraph 17 of the Complaint, except admits that American Express initiated a cancellation proceeding before the TTAB against Black Card LLC's registration of the BLACKCARD mark just 15 days after the USPTO issued the registration, and avers that the cancellation proceeding is suspended pending resolution of the litigation between the parties.

18.     American Express denies the characterizations contained in paragraph 18 of the Complaint and respectfully refers the Court to American Express's petition for cancellation in the TTAB Action for its true contents.

19.     American Express denies the characterizations contained in paragraph 19 of the Complaint and respectfully refers the Court to American Express's petition for cancellation in the TTAB Action for its true contents.

20.     American Express denies the allegations contained in paragraph 20 of the Complaint, except states that American Express has filed an action against Black Card LLC (but not Visa or Barclays) in the Southern District of New York to prohibit plaintiffs from using the BLACKCARD mark.

21.     American Express denies the allegations contained in paragraph 21 of the Complaint, except admits that American Express communicated with Barclays

6

concerning American Express's rights in the BLACKCARD mark and informed Black Card LLC of this communication, and that American Express's communications were made under the protections of Rule 408 of the Federal Rules of Evidence.

22.     American Express admits the allegations contained in the first sentence of paragraph 22 of the Complaint, and avers that American Express's communications with Black Card LLC were made under the protections of Rule 408 of the Federal Rules of Evidence.  American Express denies knowledge or information sufficient to support a belief as to the second sentence of paragraph 22 of the Complaint.

23.     American Express denies knowledge or information sufficient to support a belief as to the allegations contained in paragraph 23 of the complaint.

24.     American Express denies the allegations contained in paragraph 24 of the Complaint, except neither admits nor denies the allegations to the extent they call for a legal conclusion to which no response is required.

## FIRST CLAIM FOR RELIEF

(Declaratory Relief Under the Lanham Act)

25.     American Express restates and incorporates by reference its answers to the allegations contained in paragraphs 1 through 24 of the Complaint as if fully stated herein.

26.     American Express denies the allegations contained in paragraph 26 of the Complaint except neither admits nor denies the allegations to the extent they call for a legal conclusion to which no response is required, avers that American Express has protectable trademark rights in the BLACKCARD mark and that plaintiff's use of the

7

BLACKCARD mark infringes on those rights, refers the Court to a copy of the complaint American Express filed in the New York action, and denies any allegations inconsistent therewith.

27.     American Express denies the allegations contained in paragraph 27 of the Complaint, except admits that the plaintiff seeks a declaratory judgment in this action.

28.     American Express denies the allegations contained in paragraph 28 of the Complaint.

## SECOND CLAIM FOR RELIEF

### (Unfair Competition Under Wyoming Law)

29.     American Express restates and incorporates by reference the answers to the allegations contained in paragraphs 1 through 28 as if fully stated herein.

30.     American Express denies the allegations contained in paragraph 30 of the Complaint.

31.     American Express denies the allegations contained in paragraph 31 of the Complaint..

## ANSWER TO PRAYER FOR RELIEF

American Express specifically denies that plaintiff is entitled to the relief requested or to any other relief as to any of the claims set forth in the Complaint.

8

## COUNTERCLAIMS

Defendants American Express Marketing & Development Corp. and American Express Travel Related Services Company, Inc. (collectively, "American Express"), by their attorneys, Williams, Porter, Day & Neville, P.C. and Debevoise & Plimpton LLP, for their Counterclaims against Black Card LLC, allege upon personal knowledge with respect to themselves and their own acts, and upon information and belief as to all other matters, as follows:

### Preliminary Statement

1.    The American Express Centurion Card, popularly known as the Black Card, is the most exclusive, sought-after card in the world.  Coveting the inimitable reputation enjoyed by the Centurion Card, plaintiff has perpetrated a scheme to confuse the public and misappropriate for itself the enormous goodwill of the Centurion Card by launching its own, imitation "Black Card" that not only rips off the Centurion Card's "Black Card" alias, but also, as shown below, copies the trade dress of the unique, distinctive Centurion Card.  Even more brazenly, plaintiff (which audaciously incorporated under the name Black Card LLC and promotes its card at the website www.blackcard.com), is seeking to register a family of BLACK CARD trademarks so that it can claim the exclusive right to use that mark, which the public long has associated exclusively with the Centurion Card and American Express.

23293921v7

 

2.	Not content to deceive the public only through its trademark and trade dress, plaintiff also markets its products and services in a manner that misleads consumers into believing that its "Black Card" offers benefits that are superior or equivalent to those offered by the Centurion Card, when instead its services are inferior. Plaintiff's advertising and marketing efforts emphasize the exclusivity of its customers and the benefits available to them, all in the context of a black-colored motif.  *See* Black Card LLC Direct Mail Materials, attached hereto as **Ex. A**.  These promotional activities are designed to confuse potential customers into believing either that plaintiff's "Black Card" is the mythical Black Card that they have heard about for years (which is the American Express Centurion Card), or that it provides the same level of bespoke services as provided to Centurion Card members.  In fact, plaintiff's card does not come close to offering the extraordinary and unique benefits offered to Centurion Card members.

3.	Because plaintiff's actions are likely to confuse and deceive consumers, harm the goodwill of the Centurion Card and the American Express brands, and dilute the

10

distinctiveness of the Centurion Card, American Express filed a lawsuit in the Southern

District of New York in February 2010, and now files these Counterclaims (for possible

litigation in this Court, should the Court deny American Express's pending motion to

dismiss, stay or cancel plaintiff's Wyoming complaint) to stop plaintiff from trading off

the name, look, and standards of the Centurion Card, and from trying to expropriate for

itself exclusive rights to the "Black Card" name.  Moreover, because plaintiff's card is

black in color and has not acquired secondary meaning linking plaintiff's BLACK CARD

trademark to plaintiff, in the minds of consumers, the "Black Card" name is merely

descriptive for plaintiff's credit card and thus is not registrable as a trademark by

plaintiff.

### Nature of Counterclaims

4.     These counterclaims relate to Black Card LLC's violation of American

Express's rights in the BLACKCARD trademark and the trade dress of the American

Express Centurion Card, its false advertising for products and services bearing or offered

under the BLACKCARD mark, and its improper registration of the BLACKCARD

trademark and domain name.

### Jurisdiction

5.     This Court has jurisdiction over American Express's counterclaims

because (1) the counterclaim related to registration of plaintiff's trademark forms part of

the same case or controversy asserted by Black Card LLC in its complaint, and (2) the

other counterclaims are permissive counterclaims.  This Court also has jurisdiction over

the subject matter of American Express's counterclaims in this action pursuant to 15

U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, and has supplemental jurisdiction

pursuant to 28 U.S.C. § 1367(a).  This Court also has jurisdiction under 28 U.S.C. § 1332

because there is complete diversity of citizenship between the parties and because the

amount in controversy exceeds $75,000.

### The Parties

6.      Defendant American Express Marketing & Development Corp.

("AEMDC") is a corporation organized and existing under the laws of the State of

Delaware with its principal place of business at 200 Vesey Street, New York, NY 10285.

7.      Defendant American Express Travel Related Services Company, Inc.

("AETRS") is a corporation organized and existing under the laws of the State of New

York with its principal place of business at 200 Vesey Street, New York, NY 10285.

8.      AEMDC licenses the use of its trademarks to its parent company AETRS.

AETRS provides credit card, charge card, debit card and related services through its

subsidiary licensees.

9.      Founded in 1850, American Express is a leading provider of global

financial services, including credit and charge card services that are offered in connection

with different-colored charge cards.  These various cards include the Centurion Card,

commonly known to the public as the Black Card.

10.      On information and belief, plaintiff Black Card LLC is incorporated

under the laws of the State of Wyoming with its principal place of business located at 250

Veronica Lane, Suite 206, Jackson, WY 83001.  Its ultimate principal is Scott A. Blum,

the founder of the Internet retail website Buy.com.  As plaintiff noted in its response to

American Express's Interrogatories, Mr. Blum has been aware of the American Express

Centurion Card for many years, including prior to plaintiff's incorporation and prior to its

provision of credit card services under the BLACKCARD mark.

11.     Last year, plaintiff began offering a "Black Card" credit card called the

Black Card, co-branded with Visa, Inc.'s VISA logo, in cooperation with Barclays Bank

Delaware.  The card is black in color and offers certain premium benefits such as

concierge services and airport lounge access.

## The Centurion Card

12.     American Express offers a variety of credit and charge cards and related

services to the public.  Card members typically pay annual fees to obtain a card.  In

return, different cards come with different types and levels of services and benefits such

as travel services and insurance, purchase protection, special access and offers through

American Express partners such as preferred or exclusive access to events and discounts

at retail stores, a rewards program with points that can be redeemed for travel rewards,

gift cards, merchandise, event tickets, or cash back on purchases.

13.     Many of American Express's cards are distinguished and known by their

color.  Because American Express's charge cards obviate the need to use cash, the first

American Express charge card was colored green.  That card remains one of the principal

cards in the American Express family, and has become known to the public as the

American Express Green Card.  Since then, American Express has introduced other

colored cards that feature different fees, services and benefits.  For example,

American Express offers a no-fee credit card with a blue box known as "Blue from

American Express," a white-colored charge card with benefits that can be

customized known as the "Zync Card," a small-business charge card that offers

trade terms known as the "Plum Card," the well known "Gold Card" and "Platinum

Card," which offer richer packages of services and benefits, and, of course, the

black-colored "Centurion Card."



14.     American Express launched the invitation-only Centurion Card, which

was named after the image of the helmeted warrior depicted on the card and in an

American Express logo, more than a decade ago.  The Centurion Card is famous

throughout the world, and is known in the media, popular culture and to consumers as the

Black Card.  American Express customer service representatives regularly refer to the

Centurion Card as the "Black Card" in communications with consumers, and American

Express executives also refer to the Centurion Card as the "Black Card" in external and

internal communications.

15.     The Centurion Card is unique from other charge and credit cards in part

because of its exceptional benefits and services, such as dedicated concierge and travel

agents, personal shoppers at exclusive retail stores, first class flight upgrades, invitations

to exclusive events, and special deals with hotels such as free nights and upgrades to

suites.

14

16.     The design of the Centurion Card is also unique.  The Centurion Card has a patterned, black-colored background framed by a gold printed border.  Above the card number, in block, gold-colored letters, are the words "AMERICAN EXPRESS."  The card itself is made from titanium, which distinguishes the Centurion Card from plastic credit and charge cards.

17.     Because of these special attributes and because of the unique and exclusive services available to Centurion Card members, the black Centurion Card has become a worldwide symbol of status and success and has garnered widespread attention from the media and in popular culture.  For example, in a July 23, 2007 article about the Centurion Card and other copycat premium card services, CNNMoney.com noted that "the 'Black Card' is a status icon" and stated:

> The mere mention of American Express' Centurion card, better known as the black card, conveys a status so rarefied that it literally can't be quantified by banalities like credit limits, which of course its cardholders are not subject to.

The article continued by quoting Robert McKinley, CEO of credit-card tracker CardWeb.com, as saying that "The AmEx black card is in its own league."  Jessica Dickler, "New: Extreme Credit Cards," http://cnnmoney.com/2007/18/lifestyle/luxury_credit_cards/index.htm, July 23, 2007, attached hereto as **Ex. B**.

18.     Since long before plaintiff launched its product or even sought to register the BLACK CARD trademark, the Centurion Card has been widely referred to as the

15

"Black Card" in popular culture, media and entertainment, including in print and internet

publications, on television shows and film, and in popular music.  For example:

- In December 1999, a *CBS Marketwatch* story about the launch of the Centurion Card reported that "American Express' Centurion, also known as the Black card, rolled off the press in October….  The Black card is a leap over MasterCard's World Card and the Visa Signature, which were introduced…[as] an answer to American Express's platinum card."  Your Money: Credit Card Perks for the Affluent,  *CBS Marketwatch*, December 14, 1999.

- A *Chicago Sun Times* article about the Centurion Card in 2002 noted that "American Express may have an interest in keeping the list of cardholders of the black card short to maintain their exclusivity."  Helen Stock, "Concierge Service Part of Amex 'black card,'" *Chicago Sun-Times*, April 14, 2002 at 37.

- In June, 2002, the *Orlando Sentinel* published an article reporting on upscale credit cards, which noted that "the hottest card, available by invitation only, is the American Express Centurion, or Black card."  Alfred Borcover, "Pricey Charge Cards earn Travel Perks," *Orlando Sentinel*, June 2, 2002 at L9.

- A *BusinessWeek* story about the Centurion Card in August 9, 2004 was titled "This Black Card Gives You Carte Blanche."  Mara Der Hovanesian, "This Black Card Gives You Carte Blanche," *BusinessWeek*, Aug.9, 2004, attached hereto as **Ex. C**.

- MTV.com's "Full Episode Guide" for the television series, *Newlyweds, Nick and Jessica*, states:  "They arrive in Texas with their entourage . . . and Jess's new American Express Black Card—an elite credit card that features full valet service nationwide."

- In the *New York Times* best-selling novel *Everyone Worth Knowing*, by Lauren Weisberger, the main character describes how a co-worker used a Centurion Card to pay for dinner: "There it was, the mythical American Express

16

black card.  Available by invitation only to those who charged a minimum of $250,000 per year."

- In "Better Than Yours" by Grammy-winning artist Kanye West, Mr. West sings:  "Oh my god is that a black card? I turned around replied why yes, but I prefer the term African-American Express."

19.    The Centurion Card has also generated widespread attention on Internet

blogs, websites, and fan pages, where it is regularly referred to as the Black Card:

- www.ehow.com pronounces "The American Express Centurion, better know as the 'black card,' is the most exclusive credit card in the world." ("What Is the Most Exclusive Credit Card?," http://www.ehow. com/about_4614729_what-exclusive-credit-card.html).

- The website www.consumercreditcardguide.com notes that "American Express keeps most details about its mysterious 'black card' hidden from the general public." ("How to Get the Mysterious Black Card from Amex," http://www.consumercreditcardguide.com/credit-card-blogs/get-the-amex-black-card).

- An article discussing the "American Express Black Card" at www.lovetoknow.com states that "[f]or many years, people whispered about an American Express Black Card that was offered to the most affluent and powerful people throughout the world." (http://creditcards.lovetoknow.com/ American_Express_Black_Card).

- The website www.thetruthaboutcreditcards.com calls the "American Express Black Card" the "one credit card [that] has mystified consumers and the general public for years."

- A website called www.blackcardtoday.com reports that "The American Express Black Card, officially called the Centurion Card is one of the most difficult to obtain credit cards, and also one of the most expensive credit cards." ("Elite & Exclusive - The American Express Black Card", http://www.blackcardtoday.com/).

17

- A posting on www.mahalo.com website states that "nothing signals money, mystery and, well, money, like an American Express Black Card, officially called the Centurion Card." ("How to Get an American Express Black Card," http://www.mahalo.com/how-to-get-an-american-express-black-card).

- Creditcards.com published accounts of real life experiences with the Centurion Card in an article titled, "You've arrived!  True tales of the mysterious Black Card: The American Express card for uber rich has magnetic appeal." (http://www.creditcards.com/credit-card-news/american-express-black-card-opens-doors-1278.php)

*See* Representative samples of Internet references to the Centurion Card as the Black Card are attached hereto as **Ex. D**.

20.     A number of websites also include amateur and professional videos dedicated to the Centurion Card, and others provide information about and a forum for discussing the Centurion Card, such as www.blackcardsource.com and www.luxuryplastic.com.  These websites regularly refer to the Centurion Card as the "Black Card."  Similarly, on Wikipedia, the popular, publicly-edited Internet encyclopedia, the entry for "Black Card" refers directly to the Centurion Card.  For example, in the Wikipedia entry from June 2008 (prior to plaintiff's launch of its card), Wikipedia reported: "The **Centurion Card**, popularly known as the **Black Card**, is a charge card issued by American Express."  *See* http://en.wikipedia.org/wiki/Centurion_Card, attached hereto as **Ex. E**.  Wikipedia continues to note that the Centurion Card is known as the "black card."

21.     As these many unsolicited references all evidence, the public closely associates the term "Black Card" with American Express and the Centurion Card and

18

uses the term "Black Card" to refer exclusively to the American Express Centurion Card, and has done so since long before plaintiff launched its "Black Card" product or sought to register the BLACK CARD trademark. The term "Black Card" is so widely used to refer to the Centurion Card that American Express itself has used the term "Black Card" in communications with its consumers, the media, and the trade.

22.     Even after the launch of plaintiff's ersatz "Black Card," the popular press continues to recognize that the Centurion Card is *the* Black Card. For example:

- "You can sign up for the Tango Rewards card, which gives you $10 back for every $100 you spend (and looks similar to the seldom seen American Express Black card)." Gabe Berman, "Ultra Owners Drop Pretense, Now Ultra Cool," *Miami Herald*, Feb. 19, 2010.

- "The most-successful brands don't focus on what we need; they focus on what we want. We need a credit card; we want an American Express Black card. We need a cellphone; we want the yet-to-be-released iPhone 4G." Brian Martin, "Remember to Give Them What They Want (It's Really Very Simple): Successful Brands Do a Good Job of Satisfying People's 10 Basic Desires," *Advertising Age*, Feb. 3, 2010.

- "The Centurion card, which is also called the American Express 'Black Card,' is by invitation only. 'It's a status symbol,' says Adam Jusko, founder of IndexCreditCards.com. 'With the American Express Black Card, you're in the upper echelon with top athletes, rappers and celebrities.'" Lucy Lazarony, "Credit Card Guide 2010: American Express Centurion," www.bankrate.com, Feb. 2, 2010.

- "The American Express Centurion Card, more commonly known as the 'Black Card,' has become the status symbol du jour for high-end cardholders." Brian O'Connell, "How to Get the Amex Black Card," *mainstreet.com*, June 4, 2010.

*See* Examples of popular press usage, attached hereto as **Ex. F**.

23.     American Express has made enormous efforts to establish the goodwill and positive reputation currently associated with the Centurion Card, popularly known as the Black Card.

### Other Black-Colored Cards

24.     Since the introduction of the Centurion Card, a number of other companies offering credit, charge, and debit card-related services have begun offering black-colored cards to their consumers that purport to offer high-end services and benefits.  Among others, MasterCard, Citibank, Chase, Bank of America, and the Royal Bank of Scotland have all issued black-colored credit cards.

25.     These black-colored credit cards are aptly described as black cards; however, none are referred to as *the* Black Card.  To the contrary, each of these issuers has taken steps to refer to their card in other ways to distinguish their cards from the Centurion Card, given that it is so widely known as the Black Card.  For example, MasterCard has registered the trademark MASTERCARD BLACK for its card; Citibank issues black-colored cards called the "Diamond Preferred" and "Driver's Edge Options Platinum Select"; Bank of America issues black-colored cards known as the "Accolades Card" and the "Home Advantage World MasterCard," and Saks Fifth Avenue offers customers a "World Elite MasterCard Little Black Card."

20

**Plaintiff's Goods and Services**

26.     On September 20, 2005, a company called Yub, Inc. filed a trademark application with the United States Patent and Trademark Office (the "PTO").  That application, Serial No. 78/717,042, was for the mark BLACKCARD for use in connection with "Credit and debit card services."  The application was filed on an intent-to-use basis pursuant to Section 1(b) of the Lanham Act, 15 U.S.C. § 1051 (b).  The PTO published the application in the *Official Gazette* on May 23, 2006, and issued a Notice of Allowance on August 15, 2006.

27.     On September 20, 2007 Yub, Inc. assigned the application to plaintiff, which had just been formed.

28.     On November 26, 2008, plaintiff filed a Preliminary Amendment in connection with the application, disclaiming any exclusive rights to the word "BLACK." The disclaimer stated: "No claim is made to the exclusive right to use BLACK apart from the mark as shown."  Preliminary Amendment, App. No. 78/717,042, Nov. 26, 2008, attached hereto as **Ex. G**.

29.     Barclays Bank Delaware began marketing, offering and issuing, in New York and elsewhere, a black-colored credit card called the Black Card, serviced by the VISA electronic payment network and bearing the BLACKCARD mark, on or about February 5, 2009.  On February 12, 2009, plaintiff filed a Statement of Use in connection with the application.  The PTO thereafter issued Registration No. 3,613,898 on April 28, 2009.

21

30.     The credit card offered by plaintiff under the BLACKCARD mark is a black-colored credit card that bears a striking similarity to the black-colored American Express Centurion Card.  Like the Centurion Card, and unlike other black-colored credit cards, plaintiff's card features a patterned, black-colored background framed by a gold printed border.  Just above the card number, plaintiff includes block, gold colored-letters (in the case of this card, reading "BLACK CARD").  In a further attempt to mimic the Centurion Card, plaintiff's card is not made of plastic (the industry-standard substance of all credit, charge and debit cards), but rather is made from a different, premium substance.



31.     Like American Express, plaintiff markets its card through a black-colored motif.  The website for plaintiff's card is predominantly black, as are the direct mail invitations sent to prospective cardmembers (the envelope of which is shown at right).  This black motif is used to emphasize the supposedly limited, exclusive nature of the card, which trades on the well known reputation for exclusivity previously established by the Centurion Card and its black-colored motif.  Moreover, plaintiff's direct mail advertising materials, its website (shown at right), and its print advertising, deemphasize the connection with Barclays Bank Delaware and Visa, and instead highlight just



22

the "Black Card" name, which further exacerbates confusion as to the source of the

invitation to acquire the "Black Card."  *See* **Ex. A**; www.blackcard.com, attached hereto

as **Ex. H**.  Even the web address for plaintiff's card is confusing – the web address is

"blackcard.com," with no mention of Visa or Barclays in the URL.

 

32.     Plaintiff also makes advertising claims in New York and elsewhere,

including on its website (pages of which are shown above, as well as attached as **Ex. H**)

that trade off the goodwill of the Centurion Card and falsely suggest that its "Black

Card" either is the Centurion Card, comes from the same source as the Centurion Card,

or offers benefits equivalent to those offered by the Centurion Card.  For example,

plaintiff promotes its card as being available "to only 1% of U.S. residents," suggesting

23

the kind of exclusivity long-associated with the Centurion Card.  It claims to be "the

world's most prestigious" credit card offering "the best of what life has to offer," titles

more appropriately bestowed upon the Centurion Card.  It says that it provides "the

highest caliber of customer service," though its service does not match the expert,

personalized customer service offered to Centurion Card members.  And, it claims to

offer a suite of benefits that "provides Cardmembers with peace of mind that cannot be

found anywhere else," when, in fact, customers can find significantly better benefits with

the Centurion Card.  Tellingly, these webpages continue to emphasize the "Black Card"

name with barely any mention whatsoever that the card is issued by Barclays Bank

Delaware and is accepted on the Visa electronic payment network.

33.     On information and belief, at the time that it adopted the "Black Card"

name for its card, plaintiff and its principal, Scott Blum, were well aware of American

Express's black-colored Centurion Card and the pervasive references to the Centurion

Card as the Black Card by consumers, the media, and the trade.

34.     At the time Black Card LLC was formed on July 26, 2007, Scott Blum,

the founder of Black Card LLC, was aware of the American Express Centurion Card.

35.     On information and belief, through its adoption of the "Black Card"

name, its application for the BLACKCARD trademark, and its advertising, promotion

and sale of its "Black Card" credit cards, plaintiff intended to trade on the goodwill

associated with American Express and the Centurion Card and to confuse the public into

believing that its products and services are associated with American Express and the

Centurion Card.

**Plaintiff's Other Trademark Applications**

36.     Plaintiff has also applied to register a number of other trademarks that amount to variations on the BLACKCARD mark.  These include BLACK CARD, BLACK, BLACK CARD BENEFITS, BLACK CARD CONCIERGE, BLACK CARD EXCLUSIVE REWARDS, and BLACK CARD TELLAPAL, for, inter alia, charge, credit card and debit card services, and incentive awards and concierge services for credit card users.  Those applications are pending.

37.     The United States Patent and Trademark Office ("PTO") has refused registration of certain of these applications on the ground that the marks falsely suggest a connection with American Express and are descriptive marks for which plaintiff has not developed secondary meaning.

38.     For example, the PTO refused registration of the mark MY BLACKCARD, Serial No. 77/682,786, because the Trademark Examiner found that "the applicant's mark falsely suggests a connection with the American Express credit card company and its well-known 'Black Card' credit card services."  The Trademark Examiner thus concluded:

> [T]he term 'Black Card' **for the types of services identified by the applicant in this case** is famous as the name of an extremely prestigious credit card marketed by American Express, and thus uniquely and unmistakably points to that company.…  [T]he fame and prestige surrounding the American Express Centurion credit card – **which is widely known as the 'Black Card,' as shown by the evidence of record** – results in the examining attorney's determination that the wording BLACKCARD points to that company.

25

*See Notice of Suspension* re: U.S.P.T.O. Serial No. 77/682,786 (Dec. 29, 2009), attached

hereto as **Ex. I**.   The Trademark Examiner also concluded that a disclaimer for the term

BLACKCARD was appropriate even if the mark MY BLACKCARD did not convey a

false association with American Express, because it is a descriptive term.   The examiner

wrote:

> [A]pplicant's services are provided to consumers by means
> of a black-colored credit card.  The wording
> BLACKCARD in the mark thus clearly and directly
> references a key feature of the card that is the means by
> which those services are provided, and is thus properly
> considered a descriptive element in the applied-for mark.

*Id*.   There was no suggestion raised that BLACKCARD had developed secondary

meaning as to plaintiff or its goods or services.

     39.    For similar reasons, the PTO has also refused registration of the mark

BLACK CARD BUSINESS.  In explaining the reasons for refusing to register the mark,

the Trademark Examiner stated that, among other reasons,

> [B]ased on the evidence of record in this case, the term
> 'Black Card' **for the types of services identified by the
> applicant in this case** is famous as the name of an
> extremely prestigious credit card marketed by American
> Express, and thus uniquely and unmistakably points to that
> company.

*See Notice of Suspension* re: U.S.P.T.O. Serial No. 77/673,791 (Dec. 29, 2009), attached

hereto as **Ex. J**.

40.   In explaining its reasons for refusing registration for BLACK CARD

BUSINESS, the Trademark Examiner also stated:

> [T]he fame and prestige surrounding the American Express
> Centurion credit card – **which is widely known as the
> 'Black Card,' as shown by the evidence of record** –
> results in the examining attorney's determination that the
> wording BLACKCARD points to that company.

*Id.* The Trademark Examiner refused registration of the mark for the additional reason

that, as to plaintiff, the term "BLACKCARD" was descriptive under Section 2(e) of the

Lanham Act:

> The evidence of record clearly demonstrates that the
> applicant's services are provided to consumers by means
> of a black-colored credit card.  The wording BLACKCARD
> in the mark thus clearly and directly references a key
> feature of the card that is the means by which those
> services are provided, and is thus properly considered a
> descriptive element in the applied-for mark.

*Id.*

41.   For reasons similar to those described in the preceding paragraphs, the

Trademark Examiner also refused plaintiff's applications for the marks MY

BLACKCARD REWARDS, *see Notice of Suspension* re: U.S.P.T.O. Serial No.

77/682,792 (Dec. 29, 2009), attached hereto as **Ex. K**; and BLACK CARD REPORT, *see*

*Notice of Suspension* re: U.S.P.T.O. Serial No. 77/682,804 (Dec. 29, 2009), attached

hereto as **Ex. L**.

27

**Procedural History**

42.     On May 13, 2009, about two weeks after plaintiff's trademark registration was issued, American Express filed a petition in the Trademark Trial and Appeal Board (the "TTAB") for cancellation of plaintiff's registration of the mark BLACKCARD (the "TTAB Proceeding").  Plaintiff answered the petition on June 23, 2009.

43.     After some initial motion practice, the parties began to engage in discovery.  Between November 25, 2009 and February 22, 2010, the parties exchanged initial disclosures, document requests, and interrogatories, and the parties exchanged responses to document requests and interrogatories.  Both parties also served third party subpoenas and noticed third-party depositions.

44.     On February 16, 2010, Black Card LLC filed this action in the District of Wyoming, seeking a declaratory judgment to establish its rights in the trademark BLACKCARD.  On February 26, 2010, American Express filed the New York Action and on March 1, 2010 it filed a motion to dismiss the Wyoming complaint or transfer venue to the Southern District of New York, which motion remains pending. American Express also moved to suspend the TTAB proceeding, and on May 7, 2010 the TTAB issued a decision suspending that action pending the resolution of the federal court litigations.

23293921v7

**FIRST COUNTERCLAIM**

**(Trademark Infringement and False Designation of Origin
Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))**

45.     American Express repeats and realleges the allegations above as if set forth herein.

46.     By virtue of its own use of the BLACK CARD mark as a reference to the Centurion Card, and the public's reference to the Centurion Card as the BLACK CARD, the BLACK CARD mark has acquired secondary meaning as a reference to American Express and its Centurion Card.

47.     On information and belief, Black Card LLC and its predecessor and principal had actual notice and knowledge of the public's use of the BLACK CARD mark as a reference to the Centurion Card prior to its adoption of the BLACKCARD mark for use in connection with offering credit and debit card services.

48.     Black Card LLC's unauthorized use of the BLACKCARD and BLACK CARD marks in connection with credit card products and services constitute trademark infringement and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125, which prohibits the unauthorized use in commerce of any word or symbol or false designation of origin in connection with the sale or distribution of goods that is likely to cause confusion, mistake, or to deceive as to the origin of those goods.

49.     Plaintiff's design of its BLACKCARD credit card (including use of a black-colored card made from a premium, non-plastic material and that bears gold-

colored block letters just above the credit card number and a gold-colored logo border) and marketing campaign (which emphasizes the black motif, the exclusivity of its membership, the prestige associated with a black-colored credit cards, and the premium concierge and other benefits it offers) falsely suggests that its goods and services are connected with, sponsored by, affiliated with, or related to American Express and the Centurion Card and are likely to cause confusion as to the origin of these goods and services and thus constitutes trade dress infringement and false designation of origin.

50.     The intentional nature of the aforementioned acts of plaintiff makes this an exceptional case pursuant to 15 U.S.C. § 1117(a).

51.     American Express has been, is now being, and will likely be irreparably injured and damaged by plaintiff's false designation of origin insofar as the public has been or is induced to believe that plaintiff's goods and services are connected with, sponsored by, affiliated with, or related to American Express.

52.     By reason of the foregoing, American Express is entitled to a permanent injunction restraining plaintiff and all those in active concert or participation with it from further acts of false designation of origin and damages.

## SECOND COUNTERCLAIM

### (False Advertising Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))

53.     American Express repeats and realleges the allegations above as if set forth herein.

23293921v7

54.     Plaintiff advertises, markets and promotes its products and services in a manner that suggests they provide the same or equivalent benefits and features as the Centurion Card from American Express.

55.     The services offered to holders of plaintiff's "Black Card" card are inferior to the services available to American Express Centurion Card members, and are even inferior to the services available to American Express Platinum Card members.

56.     Plaintiff also makes literally false statements in its advertisements, marketing and promotional materials for the Visa Black Card., and statements that are false by necessary implication when compared to the American Express Centurion Card.

57.     The intentional nature of the aforementioned acts of plaintiff makes this an exceptional case pursuant to 15 U.S.C. § 1117(a).

58.     American Express has been, is now, and will likely be irreparably injured and damaged by plaintiff's false claims that its "Black Card" credit card provides benefits and services that are equivalent to the services provided by the Centurion Card.

59.     By reason of the foregoing, American Express is entitled to a permanent injunction restraining plaintiff and all those in active concert or participation with it from further acts of false advertising.

## THIRD COUNTERCLAIM

### (Trademark Cyberpiracy Under Section 43(d) of the Lanham Act,
### 15 U.S.C. § 1125(d))

60.     American Express repeats and realleges the allegations above as if set forth herein.

61.     Plaintiff registered and is using the domain name blackcard.com with the bad faith intent to profit from the public's association of the BLACK CARD trademark with American Express and its Centurion Card.

62.     Plaintiff's registration and use of the domain name blackcard.com, which incorporates the BLACK CARD mark in its entirety, is likely to cause consumers mistakenly to believe that plaintiff's site is sponsored, approved or endorsed by, or otherwise affiliated with, American Express or its Centurion Card.  Plaintiff's registration and use of the domain name blackcard.com is likely to detract from the distinctiveness of the BLACK CARD mark.

63.     By engaging in the activities described above, plaintiff is engaging in cyberpiracy in connection with products distributed in interstate commerce in violation of Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

64.     American Express has been, is now being, and will likely be irreparably injured and damaged by plaintiff's trademark cyberpiracy insofar as the public has been or is induced to believe that plaintiff's website and the goods and services promoted thereon are connected with, sponsored by, affiliated with, or related to American Express.

65.     The intentional nature of the aforementioned acts of plaintiff makes this an exceptional case pursuant to 15 U.S.C. § 1117(a).

66.     By reason of the foregoing, American Express is entitled to injunctive relief against plaintiff, restraining further acts of cyberpiracy, to transfer of the domain name blackcard.com to American Express, and to damages as provided in 15 U.S.C. § 1117(d).

32

23293921v7

## FOURTH COUNTERCLAIM

### (Unfair Competition under New York Law)

67.     American Express repeats and realleges the allegations above as if set forth herein.

68.     Plaintiff's acts as described above constitute unfair methods of competition in violation of N.Y. Gen. Bus. Law § 360-o and the common law of New York.

## FIFTH COUNTERCLAIM

### (Trademark and Trade Dress Dilution under New York Law)

69.     American Express repeats and realleges the allegations above as if set forth herein.

70.     The BLACK CARD trademark and Centurion Card trade dress are well known and distinctive as indicators of source for American Express and its Centurion Card services.

71.     Plaintiff's advertising, promotion, sale and distribution of its own "Black Card" credit cards dilutes and detracts from the distinctiveness of American Express's BLACK CARD trademark and Centurion Card trade dress.

72.     Plaintiff's acts of trademark and trade dress dilution, unless enjoined, will cause great injury to American Express and to the business and goodwill represented by

the BLACK CARD trademark and Centurion Card trade dress, in an amount that cannot be ascertained at this time.

73.     Plaintiff's acts as described above constitute trademark and trade dress dilution in violation of N.Y. Gen. Bus. Law § 360-l (McKinney Supp. 2009).

## SIXTH COUNTERCLAIM

### (Cancellation Under Section 2(d) of the Lanham Act 15 U.S.C. § 1052 (d))

74.     American Express repeats and realleges the allegations above as if set forth herein.

75.     Plaintiff's BLACKCARD mark is not entitled to registration because it is likely to cause confusion with American Express and its Centurion Card, popularly known as the "Black Card," under Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d).

76.     American Express's Centurion Card is commonly known by the name "Black Card," and the public has long used the term "Black Card" as a synonym for the Centurion Card, such that the public is likely the believe that the term "Black Card" is associated with the Centurion Card or American Express.

77.     American Express has long used a black-colored motif in conjunction with the marketing of the Centurion Card.

78.     The use of the term "Black Card" by the public, the media, and the trade to refer to the Centurion Card and American Express's goods and services long predates plaintiff's use of the BLACKCARD mark, and even the existence of plaintiff.

79.     Upon information and belief, plaintiff was well aware of the existence of the Centurion Card and the public's reference to the Centurion Card as the Black Card at the time it sought registration of the BLACKCARD mark.

80.     The public's longstanding use of the term "Black Card" to refer to the Centurion Card amounts to constructive usage by American Express and inures to the benefit of American Express.

81.     This usage is so widespread that American Express has itself also referred to the Centurion Card as the Black Card including in communications with card members, the media, and the trade.

82.     American Express is in no way associated with or connected to plaintiff or the goods and services offered under its BLACKCARD mark.  In fact, products bearing the BLACKCARD mark are issued and serviced by organizations that compete directly with American Express.

83.     The fame and reputation of the term "Black Card" as used to refer to the Centurion Card is such that plaintiff's use of the BLACKCARD mark is likely to cause confusion among the consuming public.

84.     On information and belief, plaintiff deliberately and willfully used and is using the BLACKCARD mark in connection with the sale of plaintiff's goods and services in an attempt to trade on the goodwill, reputation, and marketing power established by American Express in the Centurion Card and the BLACKCARD mark.

**SEVENTH COUNTERCLAIM**

**(Cancellation Under Section 2(e) of the Lanham Act,
15 U.S.C. § 1052(e))**

85.     American Express repeats and realleges the allegations above as if set forth herein.

86.     The BLACKCARD mark is descriptive of black-colored charge, credit and debit cards.  Unless plaintiff's mark has acquired secondary meaning, such that the public associates the mark with plaintiff or its goods and services rather than with black-colored cards generally or with another card issuer, the mark is considered merely descriptive and, as such, is not entitled to registration under Section 2(e) of the Lanham Act, 15 U.S.C. § 1052(e).

87.     The word "card" is generic for the charge, credit and debit card services offered under the BLACKCARD mark because such services are offered through cards.

88.     The word "black" is descriptive in relation to the charge, credit and debit card services offered under the BLACKCARD mark because the cards through which such services are offered are the color black.

89.     By voluntarily disclaiming the word "black" apart from the mark in its PTO registration, plaintiff indicated that the word "black" is descriptive in relation to the services in that application.

90.     Combining the words "black" and "card" into a unitary mark does not render the BLACKCARD mark distinctive.  To the contrary, "BLACKCARD" is descriptive for a card that is black, and for services rendered through cards that are black.

36

91.      Plaintiff has not created secondary meaning in the BLACKCARD mark such that the public associates the BLACKCARD mark with plaintiff.  Rather, as to plaintiff, the BLACKCARD mark is, at best, merely descriptive.  To the extent the BLACKCARD mark does have secondary meaning, that secondary meaning points to American Express and its Centurion Card, which popularly is known as the Black Card and which American Express refers to as the Black Card.

92.      Because plaintiff's mark BLACKCARD is merely descriptive in relation to plaintiff's credit card services, it is not entitled to a registration for the trademark BLACKCARD.

93.      If plaintiff is permitted to keep its registration of this merely descriptive trademark, it would deprive American Express of the right to use the term in relation to American Express's own black-colored cards.  Moreover, to the extent the BLACKCARD mark is merely descriptive generally, registration of this mark would deprive the public from using the term in connection with any other black-colored credit, charge or debit card.

94.      Plaintiff's Registration for the BLACKCARD mark should be cancelled because it is merely descriptive in violation of 15 U.S.C. § 1052(e).

**PRAYER FOR RELIEF**

WHEREFORE, by their undersigned attorneys, American Express prays for relief as follows:

23293921v7

1.      An injunction enjoining and restraining Black Card LLC, its officers, directors, agents, servants, employees, subsidiaries, affiliates, and representatives and all other persons, firms or corporations in active concert or participation with them (including but not limited to Scott Blum) (together, "Black Card and its Partners"), from:

>   a.      registering, applying to register, or maintaining a registration for any mark or domain name relating to, containing, or suggesting the BLACK CARD mark or any mark confusingly similar to, or an imitation of, the BLACK CARD mark, including but not limited to "BLACK CARD," "BLACK," "BLACK CARD BENEFITS," "BLACK CARD CONCIERGE," "BLACK CARD EXCLUSIVE REWARDS," "BLACK CARD TELLAPAL," "MY BLACKCARD," or any other mark belonging to American Express;
>
>   b.      using the BLACK CARD mark or any mark or domain name relating to, containing, or suggesting the BLACK CARD mark or any mark similar to, or an imitation of, the BLACK CARD mark, including but not limited to "BLACK CARD," "BLACKCARD," "BLACK," "BLACK CARD BENEFITS," "BLACK CARD CONCIERGE," "BLACK CARD EXCLUSIVE REWARDS," "BLACK CARD TELLAPAL," "MY BLACKCARD," or any other mark belonging to American Express, in a manner that is likely to cause confusion with the Centurion Card from American Express, is likely to dilute the

38

distinctiveness of the BLACK CARD trademark, or that otherwise infringes on the rights of American Express;

c.      manufacturing, distributing, shipping, advertising, marketing, promoting, selling, offering or making available for sale or otherwise making any other use of any black-colored charge cards, credit cards, or debit cards or services associated with such cards that are confusingly similar to the trade dress of the Centurion Card from American Express, are likely to cause dilution of the trade dress of the Centurion Card, or otherwise infringes on or violates the rights of American Express;

d.      representing, by any means whatsoever, that any products or services manufactured, distributed, shipped, advertised, marketed , promoted, sold or offered or made available for sale by Black Card LLC or any of its Partners are offered by or affiliated with American Express;

e.      advertising, marketing, or otherwise promoting any products or services manufactured, distributed, shipped, sold or offered or made available for sale by Black Card LLC or any of its Partners in any matter that falsely or misleadingly suggests or conveys that such products or services are affiliated with American Express, or are superior or equivalent to the products and services offered in connection with the Centurion Card from American Express;

      f.      doing any other act or thing calculated or likely to cause confusion or mistake in the minds of members of the public, or prospective customers of American Express's goods or services, as to the source of the goods or services marketed or sold by Black Card LLC; or

      g.      otherwise unfairly competing with American Express.

2.      That Black Card LLC and those in active concert or participation with Black Card LLC take affirmative steps to dispel such false impressions that heretofore have been created by their use of the confusingly similar BLACKCARD trademark and trade dress, including, but not limited to, recalling from any and all channels of distribution any and all BLACKCARD cards and promotional materials.

3.      That Black Card LLC account to American Express for Black Card LLC's profits and any damages sustained by American Express, to the extent calculable, arising from the foregoing acts of trademark and trade dress infringement, false designation of origin, deceptive acts and practices and unfair competition.

4.      Direct Black Card LLC to transfer to American Express ownership of the registration for the domain name blackcard.com and any other domain names containing the BLACK CARD trademark, and refrain from registering or using any other domain name confusingly similar to BLACK CARD.

5.      That, in accordance with such accounting, American Express be awarded judgment for three times such profits or damages (whichever is greater), pursuant to 15 U.S.C. § 1117, N.Y. Gen. Bus. Law § 349(h).

6.      That American Express be awarded its costs, including its reasonable attorneys' fees and disbursements in this action, pursuant to 15 U.S.C. § 1117, N.Y. Gen. Bus. Law § 349(h).

7.      That American Express be awarded punitive damages pursuant to the law of the State of New York in view of Black Card LLC's intentional and willful trademark and trade dress infringement and other conduct.

8.      That Black Card LLC deliver up for destruction all infringing products in its possession or control and all means of making the same in accordance with 15 U.S.C. § 1118.

9.      That Black Card LLC file with the Court and serve on counsel for American Express within thirty (30) days after entry of any injunction issued by the Court in this action, a sworn written statement pursuant to 15 U.S.C. § 1116(a) setting forth in detail the manner and form in which Black Card LLC has complied with any injunction which the Court may enter in this action.

10.     Such other and further relief as the Court deems just and proper.

Dated: October 29, 2010                          Respectfully submitted,
        Casper, Wyoming

                                                 AMERICAN EXPRESS MARKETING &
                                                 DEVELOPMENT CORP. and AMERICAN
                                                 EXPRESS TRAVEL RELATED
                                                 SERVICES COMPANY, INC.

Of Counsel:                                      /s/ Frank Neville_____
                                                 Frank Neville, W.S.B. # 4-1145
/s/ David H. Bernstein_____           Ryan J. Schwartz, W.S.B. # 6-3611
David H. Bernstein (Admitted *pro hac vice*)     WILLIAMS, PORTER, DAY, & NEVILLE, P.C.
Eric D. Meyer (Admitted *pro hac vice*)          159 No. Wolcott
DEBEVOISE & PLIMPTON LLP                          P.O. Box 10700
919 Third Avenue                                 Casper, WY 82601
New York, New York  10022                        307-265-0700 (tel)
(212) 909-6000 (tel)                             307-266-2306 (fax)
(212) 909-6836 (fax)                             fneville@wpdn.net
dhbernstein@debevoise.com                        rschwartz@wpdn.net
emeyer@debevoise.com

                                                 *Attorneys for Defendants*
                                                 *American Express Marketing & Development*
                                                 *Corp. and American Express Travel Related*
                                                 *Services Co., Inc.*

23293921v7

## **CERTIFICATE OF SERVICE**

       The undersigned, one of the attorneys for Defendants, certifies that a true copy of the above and foregoing instrument was served upon counsel of record on the 29th day of October, 2010 addressed to and served as follows:

Kim D. Cannon, Bar # 5-1401       ☐   U. S. Mail (prepaid)
Kate M. Fox, Bar # 5-2646          ☐   Fax
Davis & Cannon, LLP               ☐   Overnight Delivery
P.O. Box 728                      ☒   PACER
Sheridan, WY 82801
**Attorneys for Plaintiff**

Michael T. Hornak *(Pro Hac Vice)*      ☐   U. S. Mail (prepaid)
Ronald P. Oines *(Pro Hac Vice)*        ☐   Fax
Natalie M. Gowin *(Pro Hac Vice)*     ☐   Overnight Delivery
RUTAN & TUCKER, LLP          ☒   PACER
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, CA 92626-1931
**Attorneys for Plaintiff**

_____

43