# United States District Court
## For The District of Wyoming

| | | |
|---|---|---|
| BLACK CARD, LLC, a Wyoming limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>AMERICAN EXPRESS MARKETING & DEVELOPMENT CORP., a Delaware corporation; AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC., a New York corporation,<br><br>Defendants. | ) | Case No. 10-CV-25-D |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

THIS MATTER comes before the Court on Defendants' Motion to Dismiss or, in the Alternative, to Stay or Transfer [Doc. 14]. The Court, having considered the Motion and supporting memorandum and the Plaintiff's response thereto, having conducted a hearing, and considering itself otherwise fully advised in the matter, hereby FINDS and ORDERS as follows:

## I. Factual Background

This matter concerns the rights to the trademarks "BLACKCARD" and "BLACK CARD," as well as the their use and the use of similar trademarks in association with

credit, charge, and debit card services. Plaintiff, Black Card, LLC, brings this action seeking, in part, a declaratory judgment that Defendants have no protectable trademark rights in “Black Card” or “Blackcard” and further, that Plaintiff’s use of those marks does not infringe on any valid trademark rights held by Defendants. Defendants have filed a related suit in the United States District Court for the Southern District of New York and move to dismiss Plaintiff’s Complaint as an improper anticipatory filing. Accordingly, the precise issue now pending before the Court is whether this matter should proceed in the District of Wyoming.

A. The American Express Centurion Card

Defendants American Express Marketing & Development Corp. and American Express Travel Related Services Company, Inc. (collectively, “American Express”) provide global financial services, including credit and charge card services that are offered in connection with different-colored charge cards. The most exclusive and sought after American Express charge card is the black-colored Centurion Card, which was launched in 1999 and is popularly known as the "Black Card." The Centurion Card is an invitation-only card that in addition to its exclusivity distinguishes itself from other charge and credit cards with the benefits and services offered in conjunction with the card. Among the benefits that accompany the Centurion Card are dedicated concierge and travel agents, personal shoppers at exclusive retail stores, first class flight

upgrades, invitations to events, and exclusive deals with hotels such as free nights and upgrades to suites. In conjunction with this credit card, American Express has a federally registered trademark for the mark "CENTURION CARD."

B. Black Card LLC's "Black Card"

Plaintiff Black Card LLC is a Wyoming limited liability company in the business of providing an exclusive, limited membership credit card known as the "Black Card" or the "VISA Black Card." Plaintiff offers the Black Card through agreements with Barclays Bank Delaware ("Barclays") and Visa U.S.A.("Visa"). Plaintiff's "Black Card" provides cardholders with benefits including concierge services, access to airport lounges, travel insurance, rewards programs, and luxury gifts. According to Plaintiff, membership of the credit card offered by Plaintiff under the mark "Black Card" is limited to just one percent of U.S. residents to ensure high quality personal service to each cardholder.

C. Plaintiff's Registration of the "BLACKCARD" Mark and Related Proceedings Before the Trademark Trial and Appeal Board

On September 20, 2005, Plaintiff's predecessor filed an application with the United States Patent and Trademark Office ("USPTO") for registration of the mark "BLACKCARD" for use in connection with credit and debit card services. Plaintiff began marketing its card beginning in July 2007 and entered into agreements with Barclays

and Visa to offer credit card services under the BLACKCARD mark in 2008. In February 2009, Plaintiff issued the first credit and debit cards using the BLACKCARD mark. On April 28, 2009, having received no opposition to Plaintiff's trademark application, the United States Patent and Trademark Office issued Plaintiff the Certificate of Registration for the BLACKCARD mark.

On May 13, 2009, approximately two weeks after the USPTO issued Plaintiff trademark registration for the BLACKCARD mark, American Express filed a cancellation petition before the Trademark Trial and Appeals Board ("TTAB"), seeking cancellation of Plaintiff's registration for the BLACKCARD mark. In its cancellation petition, American Express asserted: 1) that the BLACKCARD mark is merely descriptive under Section 2(e) of the Lanham Act; and 2) that under Section 2(a) of the Lanham Act, the BLACKCARD mark is likely to cause confusion by falsely suggesting a connection with American Express. Black Card filed a Motion for Partial Summary Judgment in the TTAB proceeding on the ground that American Express could not, as a matter of law, establish that the BLACKCARD mark falsely suggests a connection with American Express. In response, American Express filed a motion for leave to amend the cancellation petition to withdraw its false suggestion claim and to add a "likelihood of confusion" claim.[1]

[1] American Express's motion was filed after both this lawsuit and a related lawsuit filed in the Southern District of New York were filed. Accordingly, American Express's motion also sought a stay of the TTAB proceedings in light of the pending

D. Discussions Regarding Anticipated Infringement Action and Ensuing Federal District Court Litigation

As the TTAB proceeding advanced, American Express asserts that it began to consider litigation against Black Card LLC and its business partners to challenge use of the BLACKCARD mark as infringing on its common law trademark rights.[2] On February 9, 2010, counsel for American Express informed Plaintiff's counsel that American Express was considering filing a federal district court action against Plaintiff and its business partners to prohibit their use of the BLACKCARD mark and to protect American Express's asserted common law trademark rights. During this telephone conversation, counsel for American Express inquired about the possibility of a settlement meeting between American Express, Plaintiff, and Plaintiff's business partners, Barclays and Visa. Black Card's counsel responded that it was not interested a meeting that included its non-party business partners, but that it would consider a meeting between the parties to the TTAB proceeding. Black Card asserts that American Express never responded to its invitation to a two-party settlement negotiation.[3]

---

federal district court litigation.

[2] The TTAB is empowered to decide only matters relating to the registration of trademarks and does not have authority to grant broad injunctive relief.

[3] Both parties attempt to paint the other as being unresponsive to their invitations to conduct settlement negotiations on February 9, 2010. Although it is unclear to the Court whether there is a genuine dispute as to the facts underlying this discussion, for

On February 11, 2010, American Express's counsel sent an email to Black Card's counsel asking for a response to, among other topics, whether "[Black Card] has any reaction to our discussion regarding a proposed settlement between American Express, Black Card LLC, Barclays and Visa." Black Card's counsel responded the same day indicating that his client was still "considering" the items raised in the email and that he would "get back to [counsel] shortly."

On February 16, 2010, Black Card filed its Complaint in this matter. That same day, counsel for American Express sent another email following up on previous email discussions and asking whether counsel for Black Card was able to provide his client's response to the issues raised in the February 11, 2010 email. Only after Black Card's Complaint was on file with this Court, counsel for Black Card responded to the email discussion of a proposed four-party settlement, stating: "With respect to a settlement meeting, as I mentioned during our telephone conference, we are not inclined to and see no reason to have a meeting that includes non-parties." Plaintiff's counsel then inquired whether "American Express want[ed] to have a meeting with Black Card LLC?"

The following day, February 17, 2010, American Express first learned of Black Card's lawsuit in this Court when it received a copy of the complaint from its registered agent for service of process, CT Corporation. Black Card's Complaint in this matter

---

purposes of this motion, the Court views the evidence in the light most favorable to Plaintiff as the non-moving party. The Court therefore credits Plaintiff's version of events.

seeks a declaratory judgment that American Express has no protectable trademark rights in "Black Card" or "Blackcard," and that Black Card's use (as well as the use by Black Card's business partners, Barclays and Visa) does not violate any rights of American Express. The Complaint also asserts an unfair competition claim under Wyoming common law in connection with American Express's stated intentions to bring suit against Black Card and its business partners for trademark infringement.

On February 26, 2010, American Express filed its previously-threatened suit against Black Card in the Southern District of New York in an action captioned *American Express Marketing Development Corp. and American Express Travel Related Services Company, Inc. v. Black Card LLC,* No. 10-CV-1605 (the “New York Action”). American Express's complaint in the New York Action includes the same rights at issue in this action. In the New York Action, American Express asserts claims for trademark infringement and false designation of origin under Section 43(a) of the Lanham Act; trademark cyberpiracy under Section 43(d) of the Lanham Act, trademark and trade dress dilution under New York State law; unfair competition (false advertising) under New York State law; and cancellation of Black Card's BLACKCARD trademark under Sections 2(d) and 2(e) of the Lanham Act, 15 U.S.C. § 1052(d),(e).

## II. Discussion

American Express argues that Black Card’s first-filed Complaint in the District of Wyoming should be dismissed as an improper anticipatory filing. When complaints

raising the same issues between the same parties are filed in two courts of coordinate jurisdiction, the court with jurisdiction over the second-filed action ordinarily will exercise its discretion to decline jurisdiction so that the first-filed action may proceed without the waste of judicial resources and the risk of inconsistent rulings. *Buzas Baseball, Inc. v. Bd. of Regents of Univ. Sys. of Ga.,* 189 F.3d 477, 1999 WL 682883, at *2 (10th Cir. 1999) (unpublished). This principle is not without exception, however, and "[a] district court may decline to follow the first-to-file rule and dismiss a declaratory judgment action if that action was filed for the purpose of anticipating a trial of the same issues in a court of coordinate jurisdiction." *Id.* at *3 (citing *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987)).

In deciding whether to dismiss a declaratory judgment action, the Tenth Circuit has instructed district courts to consider:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to res judicata; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir.1994) (internal quotations omitted). Here, there can be no dispute that Plaintiff's declaratory judgment action would clarify whether Plaintiff's use of the BLACKCARD mark infringes on any

common law rights held by American Express. Further, the resolution of this matter would largely resolve the existing dispute between the parties.[4] Although there are two pending federal district court actions addressing this issue, the federal district court for the Southern District of New York, as the court addressing the second-filed complaint, has deferred to this court to determine the application of the first-to-file rule. Accordingly, there is no likelihood of friction between the two involved federal district courts. As demonstrated by the two pending lawsuits, the parties have opted to litigate the issues rather pursue alternative and possibly more efficient remedies. The critical factor, therefore, in the Court's determination, is "whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to res judicata." *Mhoon*, 31 F.3d at 983; *see also St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1168 (10th Cir. 1995) ("A district court may choose to avoid a declaratory judgment action because the plaintiff is using the action for procedural fencing.")

Among the factors the Tenth Circuit has emphasized in affirming dismissal of a first-filed suit as an improper anticipatory filing is a plaintiff's admission that "one

[4] Although American Express asserts a variety of claims in the New York Action that are not currently pending before this Court, most of those claims would be compulsory counterclaims in this action. The lone potential exception is American Express's claim for false advertising under New York state law. Although the New York would more fully resolve the parties dispute, the Court views this factor as neutral or only slightly favoring American Express.

consideration in filing [the] action was its concern that defendant would file suit." *Buzas Baseball*, 1999 WL 682883, at *2; *see also*, *Nacogdoches Oil & Gas, L..L.C. v. Leading Solutions, Inc.,* 2007 WL 2402723, at *2 (D. Kan. 2007) ("An improper anticipatory filing is one made under threat of a presumed adversary filing in a different district of the 'mirror image' of that suit."). "A declaratory suit is immediately suspect as an improper anticipatory filing because a declaratory action, generally speaking, is essentially the prosecution of an affirmative defense." *Medspring Group, Inc. v. Atlantic Healthcare Group, Inc.*, 2006 WL 581018, at *4 (D.Utah 2006); *see also Universal Premium Acceptance Corp. v. Oxford Bank & Trust,*, 2002 WL 31898217, at *2 (D.Kan. Dec. 10, 2002) (citing *Boatment's First Nat'l Bank v. KPERS*, 57 F.3d 638, 641 (8th Cir.1995) (stating "red flags" that suggest compelling circumstances to disregard the first-filed rule include notice that the other side was considering filing a lawsuit, and the fact that first-filed suit was a declaratory judgment action)).

    Black Card cites the Court to *Kinetic Concepts, Inc. v. Connetics Corp.*, 2004 WL 2026812 (N.D. Tex. 2004) as support for its position that its registered BLACKCARD mark necessarily makes it the "natural plaintiff" in this dispute. The *Kinetic* court noted a "general policy that a party whose rights are [apparently] being infringed should have the privilege of electing where to enforce its rights." *Id.* at *3. To this end, "[i]n the context of a trademark infringement case, . . . the alleged victim of the infringement is generally given the initial right to choose the forum in which the infringement case will

be heard." *Id.*  However, nothing in the *Kinetic c*ourt's analysis limits that policy to parties claiming to have a *registered* trademark.  Here, Black Card seems to ignore the fact that the focus of this lawsuit (and the New York Action, for that matter) is, in fact, on *American Express's* claimed trademark rights and *Black Card's* alleged infringement of those rights.  *See, e.g.,* Complaint at ¶ 26 ("Defendants contend that [they] have protectable common law trademark rights in "Black Card" or "Blackcard" and Plaintiff's use (and the use by Visa and Barclays) of the terms "Black Card" or "Blackcard" infringes the rights of Defendants."); *id.* at ¶ 27 (noting that "Plaintiff [Black Card] desires a judicial determination that (a) Defendants [American Express] have no protectable trademark rights in "Black Card" or "Blackcard"; and (b) Plaintiff's use and the use by Visa and Barclays of "Black Card" or "Black Card" does not infringe on any valid trademark right of Defendants or otherwise violate any of Defendants' rights.")  Rather than supporting Plaintiff's position, the *Kinetic* decision actually counsels in favor of dismissal.

Further, the fact that Plaintiff's complaint includes an unfair competition claim under Wyoming law in addition to its claim for declaratory judgment does not alter the Court's conclusion.  *See Sutton v. Everest National Ins. Co.*, 2007 WL 2438987 (D. Colo. 2007) (claims that are intertwined with declaratory action do not alter the declaratory nature of anticipatory suit).  Here, the alleged unfair competition and interference is American Express's assertion that Black Card and its partners are

infringing its common law trademark rights. Because the validity and enforceability of American Express's claimed trademark rights is at the heart of both issues to be decided by this Court, and because this lawsuit was filed in anticipation of American Express's affirmative prosecution of those rights in another federal district court, dismissal is appropriate.

Additionally, the history of settlement discussions between the parties and the timing of Black Card's filing of the Wyoming action in the face of threatened litigation indicates that Black Card brought suit in District of Wyoming in an effort to win a race to the courthouse and to litigate in Black Card's chosen forum. As noted above, for purposes of this motion, the Court credits Black Card's assertion that its counsel had already verbally rejected American Express's offer to participate in settlement negotiations involving Black Card's non-party business partners. Nonetheless, the Court notes that at least the written email communications in early February 2009 left American Express with the impression that Black Card was considering whether to participate in proposed settlement discussions. Counsel for American Express raised the topic of 4-party settlement negotiations in two separate emails on February 11. Although Black Card's counsel responded to other matters raised in those emails, he did not directly address the suggestion regarding settlement negotiations. Instead, he stated only that Black Card was "considering the other items in [American Express's] email" and that Black Card would get back to American Express "shortly." In fact, it was

not until after Black Card had filed suit in this matter, that counsel for Black Card specifically responded to the email discussion regarding settlement and indicated that it did not wish to involve non-parties in any such negotiations. Additionally, the timing of Plaintiff's filing of this declaratory judgment action just one week after American Express notified Plaintiff that it was considering broadening litigation beyond the issues addressed by the TTAB proceeding further confirms for the Court the anticipatory nature of this lawsuit.

Finally, although Black Card asserts that there was no way for it to predict whether or when American Express would choose to enforce its asserted trademark rights in the "Black Card" mark, the record does not demonstrate that Black Card was "caught in a web of extended and unending uncertainty necessitating a judicial determination of its rights." *Obsolete Ford Parts v. Ford Motor Co.*, 306 F.Supp.2d 1154, 1158 (W.D. Okla. 2004). Instead, as noted above, no more than one week passed from the time American Express first forecasted its intentions to expand the litigation and Black Card's filing of this suit. In addition, although it certainly was possible for American Express to have been bluffing about filing an infringement claim, the Court notes that American Express had already demonstrated its willingness to litigate Black Card's trademark registration by filing a TTAB cancellation petition. Because the record suggests that Plaintiff's response was a preemptive strike designed to secure its preferred forum rather than an attempt to clear any cloud of uncertainty,

dismissal is warranted.

## III. Conclusion

WHEREFORE, for the reasons set forth more fully above, the Court concludes that this matter was brought as an improper anticipatory filing warranting an exception to the first-to-file rule. Accordingly, the Court will DISMISS Plaintiff's complaint in favor of the related trademark infringement lawsuit now pending in the Southern District of New York.

**IT IS SO ORDERED.**

DATED this 5th day of November, 2010.

William F. Downes

Chief United States District Judge